Andrew **BACKO**, Mike Karaman, Casimir Macko, James Barno and Ercell Cummings, Plaintiffs,

v.

**LOCAL 281, UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA**, Rudy Colton, Individually and as President of Local 281, Duane Kane, Individually and as Vice President of Local 281, Sebastian Paterninti, Individually and as Treasurer of Local 281, Election Committee of Local 281, for the June 1968 Elections, consisting of Julius Amadio, Chairman et al., and Ervin B. Lambert, Business Agent and Financial Secretary, Defendants.

No. 68–CV–186.

United States District Court
N. D. New York.
Dec. 29, 1969.

Angelos Peter Romas, Endicott, N. Y., for plaintiffs; Theo. J. Totolis, Endicott, N. Y., of counsel.

McMahon & Crotty, Buffalo, N. Y., for defendants; Thomas P. McMahon, Buffalo, N. Y., of counsel.

---

## OPINION

MacMAHON, District Judge.*

This is a motion for judgment notwithstanding the verdict, pursuant to Rule 50(b), Fed.R.Civ.P., as to all defendants who were found guilty by a jury of civil contempt, and a motion for a judgment of acquittal, pursuant to Rule 29, Fed.R.Crim.P., as to two defendants, Rudy Colton and Ervin B. Lambert, who were found guilty by the same jury of criminal contempt.

Plaintiffs, members of defendant Local 281, United Brotherhood of Carpenters and Joiners of America and candidates in the June 6, 1968 election of union officers, brought an action against defendants, Local 281, Rudy Colton, the president, Duane Kane, the vice president, Sebastian Paterninti, the treasurer, and the Election Committee and its chairman, Julius Amadio. The suit was to enforce plaintiffs' rights to equal treatment in the distribution of campaign literature under Section 401 of the Labor Management Reporting & Disclosure Act.[1]

The Honorable Edmund Port, United States District Judge for the Northern District of New York, at approximately 10:30 A.M. on June 6, 1968, signed a temporary restraining order enjoining defendants, pending a determination of plaintiffs' main claim, from holding the election scheduled to commence at 1:00 P.M. on June 6, 1968.

There was evidence from which the jury could have found the following facts beyond a reasonable doubt:

Judge Port telephoned the union headquarters in Binghamton, New York and spoke with Elizabeth J. Wilke, office secretary for Local 281. He asked to speak with either Mr. Rudy Colton, the union president, or Mr. Ervin B. Lambert, the business representative. Mrs. Wilke replied that neither man was available. Judge Port then notified Mrs. Wilke that she should inform Mr. Colton and Mr.

---

* Of the Southern District of New York, sitting by designation.

1. 29 U.S.C. § 481.

Lambert that he had just signed an order restraining the impending election and that they could reach him by telephone in his chambers in Auburn, New York, to verify the message. Mrs. Wilke wrote the message on a piece of paper and handed it to Mr. Lambert at 12:30 P.M. She told him that it was an important message for Mr. Colton, and Mr. Lambert said he would see to it that Mr. Colton received the message. Neither man ever telephoned Judge Port to verify or clarify the relayed message.

Judge Port appointed Angelos P. Romas, Esq., attorney for plaintiffs, to serve the order to show cause containing the temporary restraining order on the union at 1:00 P.M., or as soon as possible before 6:00 P.M., on June 6, 1968.

Mr. Romas, accompanied by Mr. Leslie, served the order on Rudy Colton at approximately 1:00 P.M. At the time, Colton and Lambert were standing next to each other. Mr. Romas explained to both of them that the paper he had just served was a temporary restraining order, signed by Judge Port, enjoining the impending election. According to both Mr. Leslie and Mr. Romas, the doors had just been opened to the area where the election balloting was to take place, and no one had as yet entered.

The election proceeded in spite of the restraining order.

Defendants were tried for criminal contempt on September 25, 1969, in Syracuse, New York. The jury found only defendants Lambert and Colton guilty and acquitted the remaining defendants.

On September 26, 1969, defendants were tried for civil contempt, and the jury found all defendants guilty and awarded plaintiffs $4,700. We reserved decision on defendants' motions for judgment of acquittal and judgment notwithstanding the verdict until submission of briefs. Sentencing was deferred until after decision of the motions.

■■■ Although there are different procedures for the trial of civil and criminal contempts, the classification of conduct as constituting a civil contempt or a criminal contempt is difficult because the distinction between them does not depend on the nature of the conduct, but rather on the purpose for the proceeding.[2] If the purpose is remedial, either to coerce compliance or to compensate an aggrieved party, then the proceeding is said to be civil. If, however, the purpose is punitive, then the proceeding is said to be criminal.[3] Unfortunately, when the contempt is not committed in its presence, it is impossible for the trial court, before hearing the evidence, to determine whether the purpose of the proceeding will be to coerce compliance, to compensate an aggrieved party or to punish a wrongdoer.[4] Often, the same conduct can amount to both civil and criminal contempt because it may justify a court in resorting to both remedial and punitive measures. In such a case, both the civil and criminal charges may be tried together, as long as this does not result "in substantial prejudice" to defendant.[5]

Here, defendants were charged with "deliberate" disobedience of a court order restraining an election. The order to show cause initiating this action requested both remedial and punitive relief, and, therefore, we were involved with that type of conduct which can constitute both civil and criminal contempt.

The dual nature of the charge created a risk, not only of prejudicing the defendants, but also of confusing the jury as to the different burdens of proof and the different elements of the charge. We, therefore, tried the criminal con-

2. Gompers v. Bucks Stove & Range Co., 221 U.S. 418, 441, 31 S.Ct. 492, 55 L.Ed. 797 (1911); Civil and Criminal Contempt in the Federal Courts. 17 F.R.D. 167, 168.

3. Ibid.

4. United States v. United Mine Workers of America, 330 U.S. 258, 298-299, 67 S.Ct. 677, 91 L.Ed. 884 (1947).

5. United States v. United Mine Workers of America, supra, at 299-300, 67 S.Ct. 677.

tempt first, and after the jury returned its verdict, we tried the civil contempt to the same jury. Defendants do not claim, nor do we find from a careful review of the record, any prejudice to them from this mode of procedure.[6] We turn now to defendants' contentions.

Some of defendants' arguments relate to both the criminal and civil contempt, others only to the criminal, and still others only to the civil. We will, therefore, for the purpose of clarity, first consider the arguments relating to both aspects of the contempt, then the arguments affecting only the criminal, and then those affecting only the civil.

Defendants contend, in support of both the motion for judgment of acquittal on the criminal side and the motion for judgment notwithstanding the verdict on the civil side, that the temporary restraining order was invalid because the court lacked jurisdiction in personam and over the subject matter, the order "completely determined the issue" in question, the order was too vague to comply with Rule 65, Fed.R.Civ.P., and the order enjoined officers, and not just the union, contrary to 29 U.S.C. § 481(c). Defendants also contend that the evidence was insufficient because "there was no proof that it was the duty of the officers or agents of the union to run the election." Defendant Lambert contends that he was not named in the injunction, he was not a union officer and was, therefore, not bound by the order.

■ Defendants' argument that the court issuing the injunction order lacked jurisdiction is without merit. The argument is grounded on defend-

ants' claim that they were only served with a temporary restraining order, but never served with a summons. It is clear, however, that defendants appeared before Judge Port on June 12, 1968, at an evidentiary hearing held to determine whether a preliminary injunction should issue, and made no objection at that time to lack of jurisdiction over their person. This constituted a waiver of any objection they might have had to the court's in personam jurisdiction.[7]

Defendants predicate their claim of lack of subject matter jurisdiction on the assertion that a complaint had not been filed before the temporary restraining order was served and that a district court is without power to enjoin a union election.

The first assertion is without basis in fact because the complaint was filed with Judge Port before issuance of the temporary restraining order.[8]

■ The second assertion is without basis in law because Congress has specifically granted district courts jurisdiction to enforce "all reasonable requests of any candidate to distribute by mail or otherwise at the candidate's expense campaign literature in aid of such person's candidacy to all members in good standing of such labor organization." [9]

■ Defendants' remaining nonjurisdictional challenges to the validity of the temporary restraining order are misguided. The validity of an order issued by a court of competent jurisdiction is not open to collateral attack in a contempt proceeding based on disobedience of that order.[10] If defendants

6. *Ibid.*

7. See Engineers Ass'n v. Sperry Gyroscope Co., 251 F.2d 133, 135 (2d Cir. 1957), cert. denied, 356 U.S. 932, 78 S.Ct. 774, 2 L.Ed.2d 762 (1958) ; Hadden v. Rumsey Prods., Inc., 196 F.2d 92, 95 (2d Cir. 1952) ; 2 Moore, Federal Practice ¶ 3.04, p. 718 (2d ed. 1968).

8. Rule 5(e), Fed.R.Civ.P.; Gillson v. Vendome Petroleum Corp., 35 F.Supp. 815, 819 (E.D.La.1940).

9. 29 U.S.C. § 481(c) ; Calhoon v. Harvey, 379 U.S. 134, 140 n. 13, 85 S.Ct. 292, 13 L.Ed.2d 190 (1964).

10. United States v. United Mine Workers of America, supra, 330 U.S. at 293, 67 S.Ct. 677, 91 L.Ed. 884; Howat v. Kansas, 258 U.S. 181, 189, 42 S.Ct. 277, 66 L.Ed. 550 (1922) ; 7 Moore, Federal Practice ¶ 65.02 [4], p. 1616 (2d ed. 1968).

thought the temporary restraining order erroneous, their remedy was not to disobey it, but to seek direct review.[11] Those who disobey a court order do so at their peril, whether or not the order is valid, so long as the court issuing it has jurisdiction. Defendants, having failed to appeal from the judgment signed by Judge Port on June 15, 1968, are now foreclosed from challenging the correctness of the temporary restraining order.

 In any event, defendants' objections to the propriety of the temporary restraining order are without merit. The temporary restraining order did not "completely determine the issue," as defendants claim, but rather served the traditional function of a temporary restraining order to maintain the status quo pending hearing of the motion for a preliminary injunction.[12] Nor was the order vague. It unequivocally prohibited defendants from proceeding with Local 281's election of officers scheduled to commence at 1:00 P.M. on June 6, 1968. Finally, there is no statutory prohibition against enjoining union officers as well as the union from conducting an election.[13]

Defendants' next contention, that the evidence was insufficient because there was no proof that the officers had a duty to run the election, is also without merit.

There was testimony applicable to both the civil and criminal contempt proceedings that Rudy Colton was president, Duane Kane was vice president, and Ervin Lambert was business agent. As to Colton and Lambert, there was direct evidence on both the criminal and civil charge of their actual knowledge of the temporary restraining order prior to the commencement of the election. As to Kane and Amadio, the Chairman of the Election Committee, there was sufficient circumstantial evidence on the civil charge for the jury to draw the inference that they had knowledge of the temporary restraining order prior to the commencement of the election.

 This evidence alone was sufficient prima facie to prove that Colton and Lambert, on the criminal side, and Colton, Lambert, Kane and Amadio, on the civil side, violated the temporary restraining order. If these men were without power to prevent the election, it would be a fact peculiarly within their knowledge placing the burden on them to introduce some evidence of it.[14] No such evidence was introduced.

 Our own careful review of the record indicates, however, that there was no evidence whatever that defendant Sebastian Paterninti was even a member, much less an agent or officer, of the union. The motion for judgment notwithstanding the verdict on the civil contempt is, therefore, granted as to defendant Paterninti.

Defendant Lambert argues that he was not bound by the temporary restraining order because he was not named in the order and was not an officer of the union.

 The temporary restraining order enjoined the union, and its mandate would apply to all agents of the union who had actual knowledge of the order.[15] There was uncontradicted tes-

---

11. Bullock v. United States, 265 F.2d 683, 690 (6th Cir.), cert. denied, 360 U.S. 909, 79 S.Ct. 1294, 3 L.Ed.2d 1260 (1959).

12. Hamilton Watch Co. v. Benrus Watch Co., 206 F.2d 738, 742 (2d Cir. 1953); 7 Moore, Federal Practice ¶ 65.04 [1], p. 1625 (2d ed. 1968).

13. 29 U.S.C. § 481(c). See 29 U.S.C. § 411(a) (1); Libutti v. Di Brizzi, 233 F. Supp. 924 (E.D.N.Y.1964).

14. United States v. Bull S.S. Line, 146 F. Supp. 210 (S.D.N.Y.1956); 9 Wigmore, Evidence § 2486, p. 275 (3d ed. 1940).

15. See Reich v. United States, 239 F.2d 134, 137 (1st Cir. 1956), cert. denied, 352 U.S. 1004, 77 S.Ct. 563, 1 L.Ed.2d 549 (1957); Radio Corp. of America v. Cable Radio Tube Corp., 66 F.2d 778, 781 (2d Cir. 1933), cert. denied, 290 U.S. 703, 54 S.Ct. 373, 78 L.Ed. 604 (1934).

timony that Lambert was the union's business agent. There was also testimony that prior to the commencement of the election, Mrs. Wilke relayed to Lambert Judge Port's message and that Lambert was present when Colton was served with the temporary restraining order.

■ This evidence was more than sufficient, under both the criminal and civil burdens of proof, for the jury to find that Lambert was an agent of the union who had actual knowledge that the election was enjoined and was, therefore, bound by the temporary restraining order.

We now turn to consider defendants' arguments relating to the criminal contempt.

Defendants Colton and Lambert contend that they were not informed of the criminal nature of the contempt accusations against them, in violation of the Fourth, Fifth and Sixth Amendments of the Constitution and as required by Rule 42(b), Fed.R.Crim.P.

Rule 42(b), Fed.R.Crim.P., embodies the constitutional requirements sufficient to inform the accused of an accusation of criminal contempt.[16] The rule requires that trials for criminal contempt be prosecuted on notice stating the time and place of hearing, allowing a reasonable time for preparation of the defense, stating the essential facts and describing the act as a criminal contempt. Notice can be given orally by the Judge, or by an order to show cause applied for either by the United States Attorney or an attorney appointed by the court for that purpose.

Notice was here given by an order to show cause, on application of an attorney subsequently appointed to prosecute defendants for criminal contempt. The order stated that defendants were directed to show cause why they should not be *punished* for contempt because "of their misconduct in *deliberately* disobey-

ing and refusing to comply with and carry out the provisions of the order * * * dated June 6, 1968 * * * which enjoined the contemnors from holding the election of Local 281 scheduled for June 6, 1968."

The order, therefore, set out the essential facts alleged to have constituted the contempt and did seek punitive, and not merely remedial, vindiction. However, Rule 42(b) requires that the notice issuing to the defendants describe the contempt charged as a criminal contempt. As defendants note, this order did not specifically label the contempt as criminal.

■ Omission of a specific description of the contempt as criminal is not, however, fatal if defendants actually know that the proceeding will be criminal and are not prejudiced by the technical omission.[17]

■ There can be no question of lack of knowledge here, because the order to show cause, although it did not charge wilful and intentional disobedience, did charge deliberate disobedience and sought punitive relief. More significantly, the attorney for defendants, on August 8, 1969, more than a month prior to trial, advised the court in writing that he was available for trial from September 22 to October 3, 1969, or from October 20 to October 31, 1969, and that he was renewing all motions "which I now deem appropriate in view of your ruling that this matter raises a criminal contempt."

In the face of this admission that defendants were fully aware that the charges against them were criminal, despite their claims to the contrary, they were not prejudiced by the fact that the title and docket number were civil, and that Judge Port had mistakenly stated nine months earlier that the case was civil in nature.

Although the dual nature of the proceeding was not absolutely clear until

16. See Yates v. United States, 316 F.2d 718, 723 (10th Cir. 1963).

17. United States v. United Mine Workers of America, *supra*, 330 U.S. at 297, 67 S.Ct. 677, 91 L.Ed. 884.

a month and a half before the trial commenced, the same factual presentation and defenses were required for both charges, and defendants do not claim prejudice in the preparation of their defense, nor can they in light of their attorney's letter.[18]

This brings us to defendants' final argument which relates only to the civil contempt.

Defendants contend that plaintiffs were not entitled, as a matter of law, to an award for damages, costs and attorney's fees. This is simply incorrect.

Civil contempt is remedial, and a court has power to award damages and attorney's fees to a party aggrieved by the contempt,[19] limited to the actual loss caused by the contempt plus the costs and expenses, including counsel fees, incurred in investigating and prosecuting the contempt.[20]

Defendants make no claim that the evidence was insufficient to support the jury's award, that the award was excessive, or that the charge was in error as to damages.

Accordingly, the motion for judgment notwithstanding the verdict is granted as to defendant Sebastian Paterninti and denied as to all other defendants. There being no just reason for delay, the Clerk of the Court is directed to enter judgment dismissing the civil contempt against Sebastian Paterninti.

Defendants Lambert and Colton's motion for judgment of acquittal is denied. Defendants are directed to appear for sentencing in Utica, New York, on February 4, 1970, at 10:30 A.M., or at such time and place within the Northern District of New York, as the court may hereafter direct.

So ordered.

---

18. United States v. Aberbach, 165 F.2d 713, 714 (2d Cir. 1948) (only ten days' notice of dual nature of contempt proceeding held sufficient).

19. Fleischmann Distilling Corp. v. Maier Brewing Co., 386 U.S. 714, 87 S.Ct. 1404, 18 L.Ed.2d 475 (1967).

20. Babee-Tenda Corp. v. Scharco Mfg. Co., 156 F.Supp. 582, 587 (S.D.N.Y.1957).