457 F.2d 1067
 Polychronis GRAMMENOS and Theodore Orfanides, Appellants,
v.
C. M. LEMOS and Nile Shipping Co., S. A., a Panamanian
foreign corporation or association, as owners
and/or operators of the LIBERIAN S/T
CHARIOT, Appellees.
 No. 27, Docket 71-1057.
 United States Court of Appeals,
Second Circuit.
 Argued Nov. 1, 1971.
Decided Feb. 23, 1972.
As Modified on Denial of Rehearing March 30, 1972.
 
 John P. Cassapoglou, New York City, (Burt M. Morewitz, Newport News, Va., of counsel), for appellants.
 Thomas A. Dillon, Jr., New York City (Burke & Parsons, Raymond J. Burke, New York City, of counsel), for appellees.
 Before WATERMAN, SMITH and TIMBERS, Circuit Judges.
 J. JOSEPH SMITH, Circuit Judge:
 
 
 1
 This case arises out of the claims of two foreign seamen for damages under the Jones Act, 46 U.S.C. Sec. 688, and the general maritime law of the United States for injuries sustained when a flash fire broke out on their ship, the S/T Chariot, in Marseilles, France. They name as defendants the Nile Shipping Co., the Panamanian corporation which owns the Chariot, a Liberian flag ship, and C. M. Lemos, a Greek citizen allegedly an American resident and the beneficial owner of Nile. Appellants claim that under the expansive interpretation of Jones Act jurisdiction enunciated in Hellenic Lines Ltd. v. Rhoditis, 398 U.S. 306, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970), the cause of action is cognizable in American courts because the ship is ultimately owned, operated or controlled by American residents. The district court for the Southern District of New York, Sylvester J. Ryan, Judge, dismissed the complaint on the grounds of lack of personal jurisdiction and forum non conveniens. We find that the quashing of service was proper, but that the complaint ought not have been dismissed, as the plaintiffs may attempt to obtain service through methods other than the one already tried. We find forum non conveniens an inappropriate ground for dismissal.
 
 
 2
 Nile Shipping Company was organized in New York City by two Americans, and the original officers were American citizens and residents of New York. The company, a Panamanian corporation, is now owned by Greek citizens. The Chariot is one of many Nile ships; the current certificate of registry, issued in 1969, is from the Republic of Liberia. The Chariot and other Nile ships are managed by Nereus Shipping Co., a Greek corporation with offices in Piraeus, Greece. Nereus' American agent is Triton Shipping Co., which has offices in New York. Triton collects freights payable in New York and receives accounts from subagents in ports in the dollar area of the world. All payments go to a general operating account for Nereus ships, rather than into a separate account for each ship, and Triton pays disbursements for the expenses of running the ships from this account, on approval from Nereus. Triton also solicits some business for Nereus ships in the dollar area.
 
 
 3
 Mr. Lemos was an American citizen until 1962, when he renounced his citizenship and became a Greek citizen. He maintains a residence in London, and appellants allege that he also owns a home in Rye, New York. They cite an article in Time magazine and a listing of his name with an address and telephone number in the Rye telephone directory to support this contention. Mr. Lemos is intimately involved in the Nile and Nereus companies. In a deposition in another action involving Nereus, Triton's vice-president characterized Mr. Lemos as the mouthpiece or representative of the owners of the Nereus ships, the individual with whom Triton deals in arrangements about the vessels.
 
 
 4
 Grammenos and Orfanides signed articles for the Chariot in Greece, and the agreement stated that Greek law was to govern disputes between the parties. During the years they served on the Chariot, a tramp tanker, it did not put in at any American ports. When appellants were injured, they were treated by French and Greek doctors. In addition to this action, they filed a companion suit in the district court for the Eastern District of Virginia. After partial pretrial discovery, the case was dismissed on the ground of forum non conveniens. The seamen appealed, and the lower court was reversed by the Court of Appeals for the Fourth Circuit. Grammenos v. Liberian S/T CHARIOT, No. 15,017 May 5, 1971. In that case, Nereus as well as Triton was served and named as a defendant and thus the problem of adequacy of service was not presented as it is here. The case was remanded for further discovery and reconsideration in light of Lekkas v. Liberian M/V Caledonia, 443 F.2d 10 (4 Cir.1971), an opinion issued the same day as Grammenos. In Lekkas, the court held that although American courts could decline jurisdiction over claims of foreign seamen against foreign ship owners, before doing so a court ought to satisfy itself that it had before it full information on the factors that bear on its decision, such as the ownership and control of the ship and the allegiance of the shipowner. And it held that when shipowners requested the court to decline jurisdiction, they submitted to an obligation to provide information pertinent to the court's decision. In Lekkas, too, the case was remanded for further discovery.
 
 
 5
 Summons and complaint were served on Nile under Rule 4(d) (3) of the Federal Rules of Civil Procedure by service on Triton through one of its officers. Service on Mr. Lemos was attempted by delivery of the papers to Miss Olive Helmsley, a woman working at Mr. Lemos' sister's apartment in New York City. Appellants claim that both of these attempts at service were successful, and that even if they were not, that appellees waived defects in jurisdiction by making a general appearance in the case.
 
 
 6
 Appellants' waiver point is not well taken. The need to file a special appearance in order to object to jurisdiction or venue has vanished. A party can file a general appearance and object to personal jurisdiction or venue at any time before the answer is filed or in the answer. Kerr v. Compagnie De Ultramar, 250 F.2d 860, 864 (2d Cir.1958); Bjorgo v. Weerden, 342 F.2d 558 (7 Cir.1965); Noto v. Cia Secula di Armanento, 310 F.Supp. 639 (S.D.N.Y.1970); Pacific Lanes, Inc. v. Bowling Proprietors Ass'n, 248 F.Supp. 347 (D.Or.1965). If a party enters a case, makes no objection to jurisdiction, and asks the court to act on its behalf in some substantive way, it will be held to have waived further objection. Savas v. Maria Trading Corp., 285 F.2d 336, 340-341 (4 Cir.1960); Backo v. Local 281, United Brotherhood of Carpenters and Joiners, 308 F.Supp. 172 (N.D.N.Y.1969), aff'd 438 F.2d 176 (2d Cir.1970), cert. denied, 404 U.S. 858, 92 S.Ct. 110, 30 L.Ed.2d 99 (1971). A request for extension of time, such as appellees made, does not constitute waiver of jurisdictional objections. Pacific Lanes Inc. v. Bowling Proprietors Ass'n, supra.
 
 
 7
 The question, then, is whether there was any defect in the service of process. The standards set in Rule 4(d) for service on individuals and corporations are to be liberally construed, to further the purpose of finding personal jurisdiction in cases in which the party has received actual notice. Nowell v. Nowell, 384 F.2d 951 (5 Cir.1967), cert. denied, 390 U.S. 956, 88 S.Ct. 1053, 19 L.Ed.2d 1150 (1968); Rovinski v. Rowe, 131 F.2d 687 (6 Cir.1942). But there must be compliance with the terms of the rule, and absent waiver, incomplete or improper service will lead the court to dismiss the action unless it appears that proper service may still be obtained. Moore, Federal Practice, Sec. 4.02 (2d Ed.1970); Aquascutum of London, Inc. v. S. S. American Champion, 426 F.2d 205 (2d Cir.1970); Di Leo v. Shin Shu, 30 F.R.D. 56 (S.D.N.Y.1961).
 
 
 8
 Personal service on an individual, neither an infant nor an incompetent, can be obtained either by serving the man or woman in person or by leaving the summons with a person of suitable age and discretion at the party's usual place of abode. Under Rule 4(d) (7), service can also be performed in conformity with the rules of the state in which it is made as to service in its own courts of general jurisdiction. In New York, personal service can be accomplished through the use of the methods in the federal rule; the state also permits other forms of service, called "substituted" and "expedient" service. N.Y.C.P.L.R. Sec. 308(4) and (5). Substituted service may be resorted to when the two methods of obtaining personal service common to the state and federal rules have proven fruitless. Substituted service entails affixing the summons to the door of either the actual place of business, dwelling place or usual place of abode within the state of the person to be served and by mailing the summons to the last known residence of that person. Should it be attempted and fail, the New York law allows expedient service, that is, service "in such manner as the court, upon motion without notice, directs." N.Y.C.P.L.R. Sec. 308(5).
 
 
 9
 Appellants attempted to obtain jurisdiction over Lemos by leaving the summons with a person of suitable age and discretion at his usual place of abode. Many cases have interpreted the phrase "usual place of abode" for purposes of service of process. It has been held acceptable to leave the summons with the landlord or supervisor of the apartment building in which the party resides. See Nowell v. Nowell, supra. But when process was served on defendant's married daughter, living in the same apartment building as her father, but in a different apartment, it was held insufficient. Di Leo v. Shin Shu, supra. In this case, appellants left the documents with an adult woman working for Lemos' sister at her apartment in New York City. Lemos himself did not reside in this apartment or in the city. Therefore, it was not under any construction of the phrase, his usual place of abode. Service was properly quashed.
 
 
 10
 This is not to say, though, that substituted service would not prove effective; appellants did not attempt to utilize that method in this case. We cannot predict, of course, whether such an attempt would meet with success.[1] But the fact of invalidity of the one attempt at service does not automatically require dismissal of the complaint. The mere lapse of time between the date of filing of the complaint and the date of effective service does not cause the complaint to abate. Messenger v. United States, 231 F.2d 328 (2d Cir.1956). And the court has power, under Fed.R.Civ.P. 4(a), if the service is invalid or improper, to cause additional or new summons to be issued and good service attempted. 2 Moore, Federal Practice, Sec. 4.06 (2d Ed.1970); Aquascutum of London, Inc. v. S. S. American Champion, supra, 426 F.2d at 210; Stanga v. McCormick Shipping Corp., 268 F.2d 544 (5 Cir.1959); Thompson v. Trent Maritime Co., 149 F.Supp. 468 (E.D.Pa.1957). As the court said in Stanga:
 
 
 11
 But while the Court's conclusion . . . does affirm the District Court's action in setting aside the service of process made herein on Holmes, it does not necessarily follow that the final order of dismissal was proper at this stage.
 
 
 12
 . . . There may be other ways to effect valid service of process, e. g., attachment . . . or perhaps, under some circumstances, on the Secretary of State. Of course, what those means are, or their availability in this case is not before us. Nor was it before the District Court.
 
 
 13
 There may well come a time in which the Trial Court, in the administration of the affairs of the Court, sees that there is simply no reasonably conceivable means of acquiring jurisdiction over the person of a defendant. When that time comes it may be proper to dismiss the cause. But, on this record, relating to one single attempted service of process, that point has not yet been reached. [268 F.2d at 554]
 
 
 14
 Appellants in this case ought to be given an opportunity to perfect service on Lemos.
 
 
 15
 The question of service on Nile through Triton is more difficult. Rule 4(d) (3) permits personal service on a domestic or foreign corporation through service on one of its officers, a managing or general agent, or any agent authorized by appointment or by law to receive service of process. In order for the corporation to be amenable to service in a state, it must have minimal contacts with the state, sufficient to warrant subjecting it to suit there without offending due process standards. See McGee v. International Life Insurance, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); International Shoe Co. v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). This must be more than an incidental contact with the state, although the party does not have to be authorized to do business in the state or have offices there. If the action of an agent of the party in the state is substantial, that will justify service on the defendant in that jurisdiction. See Arpad Szabo v. Smedvig Tankrederi A. S., 95 F.Supp. 519, 522 (S.D.N.Y.1951). If a defendant is found to have sufficient contacts to justify jurisdiction, complete and adequate personal service in compliance with the rules stated above must also be accomplished. It has been held that normally, the person in charge of the activities in the state which are the basis for the conclusion that the defendant is present is the managing agent for purposes of service. See Bomze v. Nardis Sportswear, 165 F.2d 33 (2d Cir. 1948).
 
 
 16
 On the basis of the skimpy record in this case, it is difficult to ascertain whether Nile has sufficient contacts to justify personal jurisdiction in New York. An affidavit of the president of Nile stated that the officers and directors are Greek citizens residing in Athens. The shares of the corporation are held by a Greek citizen residing in London, England. The corporation does not have any office or place of business in New York. It is engaged solely in international shipping.[2] Appellants have produced no evidence of any business carried on in New York by Nile other than that of Triton.
 
 
 17
 The business affairs of Triton in New York, then, must be the basis for the power of the court to exercise jurisdiction over Nile, assuming it were properly served. Triton does solicit some business for Nile, but it is not clear whether this takes place in New York. Nothing indicates that Nile is associated or named in any way in connection with Triton's office or that Triton does business only for Nile. Triton does have bank accounts in New York and an office there. It collects and disburses money for Nereus accounts, but apparently does not exercise discretion in these tasks and does not enter into contracts for Nile. The lower court held, without elaboration, that Nile was not present in New York. Finding, as we do, that service was inadequate under Rule 4(d) (3), we do not have to explore the intricacies of the current "minimum contacts" rule. See Aquascutum of London, Inc. v. S. S. American Champion, 426 F.2d 205 (2d Cir. 1970).[3]
 
 
 18
 The crucial question in relation to service of process is whether Triton is a "general or managing agent" for Nile. Several cases have treated the issue of agency for foreign corporations and shipping companies. In De Claire Mink Ranches v. Federal Foods, Inc., 192 F.Supp. 148 (N.D.Ia.1961), the court discussed the definition of agent and concluded that it is a person or entity authorized to transact all business of the principal at a particular place or of a particular kind, generally. A general or managing agent must be invested with powers of discretion and must exercise judgment in his duties, rather than being under direct superior control as to the extent of his duty and the manner in which he executes it. See 2 Moore, Federal Practice Sec. 4.22 (2d Ed.1970).
 
 
 19
 In Arpad Szabo v. Smedvig Tankrederi A. S., supra, the court found that the activities of a shipping company's agent which collected money and paid out funds for expenses incurred in operating the vessels and did occasional hiring for the shipowner, constituted "doing business" on the part of the principal and justified service on the agent. This case was followed in Green v. Compania De Navigacion Isabella, Ltd., 26 F.R.D. 616 (S.D.N.Y.1960), in which the court distinguished Kelly v. Three Bays Corp., 173 F.Supp. 835 (S.D.N.Y.1959), aff'd 276 F.2d 958 (2d Cir. 1960), a case in which the activities of the agent were held not to constitute presence of the principal. In Kelly, the agent solicited business for the principal and for many other firms and did occasional other tasks for the principal, but was not a husbanding agent and was not empowered to enter into contracts for the principal. And other cases have held that even a husbanding agent is not a general agent of the shipowner for purposes of service when it conducts all its activities in one locality and contracts with the owner on a ship-to-ship basis. Thyssen Steel Corp. v. Federal Commerce and Navigation Co., 274 F.Supp. 18, 20 (S.D.N.Y.1967); Amicale Industries, Inc. v. S. S. Rantum, 259 F.Supp. 534 (D.S.C.1966); Novitski v. Lykes Steamship Co., 90 F.Supp. 971 (E.D.Pa.1950).
 
 
 20
 The situation in the Amicale case included a factor present in this case; the corporation which did the husbanding in Charleston was an agent of a Louisiana corporation which was the shipper's general agent in the United States. The decision may be construed to hold that sub-agents of the owner ought never be considered general agents under Rule 4(d) (3), in which case it would be directly on point, or can be seen as relying on the fact that the Charleston corporation handled only one city and did business on a ship-to-ship basis. In the present case, Triton is the sub-agent for the whole United States, and it does operate a running account for Nereus ships. Its activities are therefore somewhat closer to those of a general agent than were those of the corporation in Amicale. But Triton is in essence a collection agency, and monies are passed on to the principals as soon as possible. Triton does not exercise discretionary power; it is a subagent of Nile in one area for certain specific tasks, but is not the entity with overall authority for Nile's activities in the United States. Nereus fills that role. These facts compel the conclusion that Triton does not fall within those who under Rule 4(d) (3) can be served to obtain jurisdiction over a corporation, and the service on Nile was properly quashed.[4] We find no completed service on either defendant but reverse the dismissal of the action.[5]
 
 
 21
 One further word is necessary. Should appellants obtain valid service over Lemos in one of the aforementioned ways, they will have to face his objection that he is not their "employer" under the Jones Act and is therefore not a proper party. He would also be expected to renew his objection to the assumption by a United States court of subject matter jurisdiction over these claims of foreign seamen, asserting that contacts with this country sufficient to warrant handling the case are absent. The court below noted in its opinion that had service been valid, it would have granted summary judgment on this ground. Such a conclusion is not warranted at this juncture. Discovery is being conducted on the remand from the companion case in Virginia, and the principles of the Lekkas case, controlling there, are applicable here. The court ought to give appellants an opportunity to substantiate their thesis that Lemos is an American resident who controls and is the beneficial owner of the Chariot; this inquiry will also determine his status as employer for purposes of Jones Act coverage.
 
 
 22
 There is no need at this time to delve further into the factors treated in Hellenic Lines Ltd. v. Rhoditis, supra, which influence the court's decision on assumption of subject matter jurisdiction. While it is true that on the record as it now stands, the factors which normally incline the courts in this country to accept jurisdiction of the claims of foreign seamen are lacking, discovery may well tip the balance in the other direction. Clarification of the confused circumstances surrounding the ownership of Nile might reveal that Mr. Lemos is indeed the beneficial owner of the company and is an American resident who ought not, through formalities of incorporation, escape the duties toward seamen which Congress has imposed on shipowners.
 
 
 23
 These issues will be relevant only if appellants obtain valid service over one of the parties. We reverse the dismissal of the complaint and remand for reinstatement so that appellants may attempt to remedy the defects in service.
 
 
 
 [1]
 The New York courts have construed the terms "dwelling house" and "usual place of abode" for purposes of determining the validity of substituted service. See Karlin v. Avis, 326 F.Supp. 1325, 1330 (E.D.N.Y.1971); Rich Products Corp. v. Diamond, 51 Misc.2d 675, 273 N.Y.S.2d 687 (Sup.Ct.1966); Cottakis v. Pezas, 12 Mich.2d 214, 215, 176 N.Y.S.2d 495 (Sup.Ct.1958). If Mr. Lemos resides even temporarily in Rye and has his name and address in the telephone book, that may be sufficient to qualify his home as his "dwelling place" or "place of abode."
 
 
 [2]
 Appellants point out that in Hellenic Lines Ltd. v. Rhoditis, supra, the first affidavits of the president of the shipping company also denied contacts with the United States, but that later discovery revealed ownership by American interests. However, in that case, the plaintiffs had produced enough evidence to support in personam jurisdiction in this country; the issue was whether the court ought to exercise its discretion to decline subject matter jurisdiction. In any case, we can draw no inference from the activities of the parties there, different from those in the present case, to support the conclusion that Nile and Lemos are concealing the truth
 
 
 [3]
 In Fraley v. Chesapeake and Ohio Ry. Co., 397 F.2d 1 (3 Cir. 1968), the court ordered the defendant to answer interrogatories about the nature and extent of its business within the state in order for the trial court to make a decision on whether it was "doing business" in the state. Service had been adequate in that case. In this action, the court below refused to order Nile and Lemos to answer interrogatories submitted by the plaintiffs; these were aimed at showing American control of the corporation and Jones Act coverage, not business contacts with the State of New York. Should appellants obtain valid service, discovery on these issues may be appropriate. See p. 1802, infra
 
 
 [4]
 Appellants did not, as did the plaintiffs in Aquascutum, supra, make a motion, after service on an agent in this country was declared void, for permission to effect service on the defendants in a foreign country. On remand, they might explore the possibility of serving Nile or Nereus under Rule 4(d) (3) or under New York's long-arm statute. We note, though, that on the current state of the record, the applicability of the latter provision is doubtful. See Delagi v. Volkswagenwerk AG, 29 N.Y.2d 426, 328 N.Y.S.2d 653, 278 N.E.2d 895 (N.Y.Ct.App. January 13, 1972)
 
 
 [5]
 Forum non conveniens is not an appropriate ground for dismissal at this point. The doctrine, which "involves the dismissal of a case because the forum chosen by the plaintiff is so completely inappropriate and inconvenient that it is better to stop the litigation in the place where brought and let it start all over again somewhere else . . . is quite naturally subject to careful limitation for it not only denies the plaintiff the generally accorded privilege of bringing action where he chooses, but makes it possible for him to lose out completely, through the running of the statute of limitations in the forum finally deemed appropriate." All States Freight, Inc. v. Modarelli, 196 F.2d 1010, 1011 (3d Cir. 1952); 1 Moore, Federal Practice 0.145 , 0.145 . A decision to dismiss "presupposes at least two forums in which the defendant is amenable to process . . . [and] furnishes criteria for choice between them." Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 506-507, 67 S.Ct. 839, 842, 91 L.Ed. 1055 (1947). The factors to be taken into consideration include those relevant to the decision on refusal to exercise subject matter jurisdiction, particularly the issue of availability of another forum, as well as other practical questions such as access to sources of proof, and convenience and cost of obtaining or compelling attendance of witnesses. See Gkiafis v. Steamship Yiosonas, 387 F.2d 460 (4th Cir. 1967); Odita v. Elder Dempster Lines, Ltd., 286 F.Supp. 547 (S.D.N.Y.1968); Voyiatzis v. National Shipping and Trading Corp., 199 F.Supp. 920 (S.D.N.Y.1961). On the issue of availability of an alternative forum, the parties may wish to introduce proof of foreign law (cf. Rule 44.1, Fed.R.Civ.P.; 5 Moore, Federal Practice, 44.1.01 ); normally when the plaintiff is remanded to a foreign forum, the defendant agrees on the record to submit to jurisdiction elsewhere and to post security for any judgment awarded there. See, e. g., Garis v. Compania Maritima San Basilio, 386 F.2d 155 (2d Cir. 1967); Berendson v. Rederiaktiebolaget Volo, 257 F.2d 136 (2d Cir.), cert. denied, 358 U.S. 895, 79 S.Ct. 156, 3 L.Ed.2d 121 (1958); Lambiris v. Neptune Maritime Co., App.Div., 326 N.Y.S.2d 862 (1st Dept.1971)