Nectarios **KOUPETORIS,**
**Plaintiff-Appellant,**

v.

**KONKAR INTREPID CORP.,**
**Defendant-Appellee.**

**Nos. 741, 1273, Dockets 75–7671, 76–7006.**

United States Court of Appeals,
Second Circuit.

Argued March 17, 1976.
Decided June 11, 1976.

Herbert Lebovici, New York City (Lebovici & Safir, New York City, of counsel), for plaintiff-appellant.

John R. Geraghty, New York City (Kirlin, Campbell & Keating, Richard J. Rosenthal, Bruce C. Beringer, New York City, of counsel), for defendant-appellee, cross-appellant.

Before MOORE and FEINBERG, Circuit Judges, and WYZANSKI, District Judge.*

MOORE, Circuit Judge:

Plaintiff-appellant Nectarios Koupetoris ("Plaintiff"), a citizen and resident of Greece, brought suit in the United States District Court for the Southern District of New York to recover damages under the Jones Act (the "Act"), 46 U.S.C. § 688, and the General Maritime Law of the United States, or, in the alternative, under Liberian law, for personal injuries allegedly sustained on July 19, 1974 off the coast of Maryland, during the course of his employment as a seaman aboard the KONKAR INTREPID ("INTREPID"), the only vessel owned by the defendant-appellee-cross-appellant, Konkar Intrepid Corp. ("Shipowner"). Suit was originally brought against both the Shipowner and Konkar Maritime New York Agencies, Ltd.[1] ("New York

---

* Honorable Charles E. Wyzanski, Jr., United States District Judge for the District of Massachusetts, sitting by designation.

1. Konkar Maritime New York Agencies, Ltd. was dismissed as a party defendant with the consent of the Plaintiff.

Agencies"), the now-defunct[2] representative of the shipowner. New York Agencies occupied offices in New York City.

The Shipowner moved to dismiss the action on grounds of lack of personal jurisdiction, insufficient service of process under F.R.C.P. § 4(d)(3)[3] and inapplicability of the Jones Act, or, alternatively, *forum non conveniens*. The lower court held that personal jurisdiction over the shipowner had been properly acquired by the service of process on New York Agencies; however, the Court dismissed the complaint for insufficiency[4] under the Act, noting that, in any event, the Southern District was an inappropriate forum for adjudication of Plaintiff's cause of action. Plaintiff appealed from the dismissal of the action. The Shipowner filed a cross-appeal from so much of the lower court's opinion as held that the shipowner was subject to the Court's *in personam* jurisdiction and had been properly served with process. We affirm the judgment.

## I.

## FACTS

The relevant facts are undisputed[5] and may be briefly summarized. The Shipowner is a Liberian corporation whose office and principal place of business is in Athens, Greece. All of the outstanding shares in the corporation are owned by Greek citizens and residents. The Shipowner is not licensed to do business in the State of New York; however, it maintains substantial financial ties in New York. These include two mortgages,[6] at least one bank account[7] from which certain of the INTREPID's expenses are paid,[8] and apparently an outstanding letter of credit as well.[9]

The Shipowner's New York activities during 1974 were carried out by New York Agencies, which was empowered to draw against the Shipowner's New York bank account and to appoint husbanding agents on behalf of the Shipowner. New York Agencies did, in fact, exercise both of these powers, paying for various of the INTREPID's expenses, forwarding funds to the ship's master, and appointing husbanding agents.[10] New York Agencies also periodically provided the shipowner with an accounting of collections and payments.[11]

The INTREPID was, at the time of the alleged accident, under charter to a foreign corporation.[12] During 1974 the INTREPID called seven times at United States ports, although it never visited New York during that period. The alleged accident occurred in waters off the coast of Maryland, and Plaintiff received medical treatment in Baltimore, New Orleans, and Athens, Greece,

2. New York Agencies discontinued business on December 31, 1974.

3. Rule 4(d)(3) provides that service of process shall be made "Upon a domestic or foreign corporation . . . by delivering a copy of the summons and of the complaint to . . . a managing or general agent. . . ."

4. Plaintiff's complaint was dismissed because, on its facts, the claim was insufficient to warrant application of the Act and inappropriate to warrant adjudication in the forum selected.

5. Plaintiff's claim as to the existence of material issues of fact is without merit, since it is based upon the unsupported allegations of Plaintiff's counsel. Summary judgment under F.R.C.P. 56 was therefore appropriate disposition of this case.

6. The Shipowner attacks the evidentiary competence of this information, but does not dispute its veracity. Shipowner's brief at 7–8.

7. The charter hire for the INTREPID was paid by the charterer directly into the New York bank account.

8. The Shipowner concedes that this included such items as payment for replacement of engine parts, provisions and presumably advances to crew members as well. Shipowner's brief at 6–7.

9. Plaintiff's brief at 5–6. The Shipowner has not disputed this claim.

10. New York Agencies made such appointments during 1974, the year of Plaintiff's alleged injury. Shipowner's brief at 6.

11. Deposition of Sotiris Tselentis, vice president of New York Agencies.

12. According to Tselentis, the charterer was the Gatx Leasing and Shipping Corporation of London.

successively. Plaintiff executed his maritime employment contract in Greece, with the Shipowner's Greek hiring agent.

## II.

### PERSONAL JURISDICTION AND SERVICE OF PROCESS

This Court has previously considered the jurisdictional arguments which are raised by the Shipowner *Grammenos v. Lemos*, 457 F.2d 1067 (2d Cir. 1972). Like the present case, *Grammenos* was a suit brought by injured foreign seamen under the Jones Act and General Maritime Law of the United States, and service of process was made, *inter alia*, on the local agent of the shipowner. In determining the question of the shipowner's "presence" in New York, the Court ruled as follows:

"In order for the corporation to be amenable to service in a state, it must have minimal contacts with the state, sufficient to warrant subjecting it to suit there without offending due process standards. *See McGee v. International Life Insurance*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); *International Shoe Co. v. State of Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). This must be more than an incidental contact with the state, although the party does not have to be authorized to do business in the state or have offices there. If the action of an agent of the party in the state is substantial, that will justify service on the defendant in that jurisdiction. See *Arpad Szabo v. Smedvig Tankrederi A. S.*, 95 F.Supp. 519, 522 (S.D.N.Y. 1951)." 457 F.2d at 1072.

■ Whether a state or federal standard is applied to determine this issue,[13] there is no question that, taken together, the activity of New York Agencies and the financial ties to New York maintained by the Shipowner more than met the requirement of minimal contacts. The vessel's outstanding mortgages, the revenues and disbursements paid into and out of New York bank accounts by a New York agent, and the agent's own activity in forwarding funds to the INTREPID and appointing local husbanding agents for her—all amounted to more than "incidental contact", and in light thereof, the Shipowner's amenability to suit in New York is not violative of due process standards.

The same conclusion has been reached by numerous courts under similar circumstances. *See, e. g., Green v. Compania de Navigacion Isabella, Ltd.*, 26 F.R.D. 616, 617–618 (S.D.N.Y.1960); *Ivanhoe Trading Co. v. M/S Bornholm, et al.*, 160 F.Supp. 900, 902 (S.D.N.Y.1957); *Johannesen v. Gulf & South American Steamship Co.*, 126 F.Supp. 664, 665–6 (S.D.N.Y.1954); *Szabo v. Smedvig Tankrederi A. S.*, 95 F.Supp. 519, 521–2 (S.D.N.Y.1951).

■ Service of process on New York Agencies, as general or managing agent for the Shipowner, was likewise proper. New York Agencies' numerous activities in New York during the charter period, such as the disbursement of funds to the vessel from local bank accounts, amounted to a "regular and continuous course of substantial business by [the agent] on [Shipowner] defendant's behalf"[14] sufficient to confer Rule 4(d)(3) status upon it. Moreover, the power to appoint husbanding agents called for the exercise of discretion by New York Agencies in carrying out its duties, a factor given express consideration by this Court in *Grammenos v. Lemos, supra,* at 457 F.2d 1072–1073.

---

**13.** Since we believe that the Shipowner is present in New York under either New York law or any possible federal standard, we leave open, as we have in the past, whether federal or state law is controlling. See *Aquascutum of London v. S. S. American Champion*, 426 F.2d 205, 211 n. 4 (2d Cir. 1970); *Arrowsmith v. United Press International*, 320 F.2d 219, 228 n. 9 (2d Cir. 1963).

**14.** *Green v. Campania de Navigacion Isabella, Ltd., supra,* at 26 F.R.D. 618. *See, also, Ivanhoe Trading Co. v. M/S Bornholm, supra,* at 160 F.Supp. 903; *Johannesen v. Gulf & South American Steamship Co., supra,* at 126 F.Supp. 665; *Grammenos v. Lemos, supra,* at 457 F.2d 1073; *Cf. Granite Chemical Corp. v. Northeast Coal & Dock Corp.*, 249 F.Supp. 597, 598 (D.Me.1966).

Finally, the presence of the name "Konkar" in the titles of the Shipowner and agent suggest a certain identity [15] and closeness between the two entities and New York Agencies was listed in the 1973 edition of the Greek Shipping Directory as one of the Shipowner's two designated agents.[16]

## III.

## JONES ACT AND GENERAL MARITIME LAW

■ Although the Act, by its terms, may be invoked by alien seamen against alien employers,[17] the Supreme Court has limited its application to suits in which the defendant has some substantial contact with the United States.[18] Specific factors have been cited by the Supreme Court in this regard.[19] In *Moncada v. Lemuria Shipping Corp.,* 491 F.2d 470, 472 (2 Cir., 1974), we reviewed those factors, recognizing at the same time that the analysis was not to be undertaken mechanically:

> " . . . In determining whether the contacts in a given case are 'substantial' the courts have given consideration to the significance attaching to specific contacts. In *Lauritzen v. Larsen,* supra, the Supreme Court enumerated the following contacts as worthy of consideration: (1) the place of the wrongful act; (2) the law of the flag; (3) the allegiance or domicile of the injured party; (4) the allegiance of the shipowner; (5) the place where the contract of employment was made; (6) the inaccessibility of a foreign forum; and (7) the law of the forum. 345 U.S. at 583–592, 73 S.Ct. 921. In *Rhoditis* the Court held that this list is not exhaustive.

It decided that the shipowner's base of operations is also an important contact and that 'there may well be others.' 398 U.S. at 309, 90 S.Ct. 1731. Thus we must consider each factor and its importance in the context of this case."

In the present case, the only factor favoring the Plaintiff—other than the relatively minor one of the law of the forum—is the place of injury. The ship's flag was Liberian; the seaman was a citizen and resident of Greece, the country in which he also executed his contract of employment. There is no evidence that the Shipowner is controlled or beneficially owned by American citizens or residents, and it appears clear that the Shipowner's "base of operations" is Athens, Greece. The Shipowner is amenable to suit in Greece, and has agreed not to interpose any defenses based upon laches or the statute of limitations if suit is commenced there within ninety days of the dismissal of Plaintiff's federal action.[20]

Although not among the factors enumerated in *Rhoditis, supra,* and *Moncada, supra,* we have also given consideration to the facts that all of the crew members on duty aboard the INTREPID at the time of the alleged accident were, like the Plaintiff, alien seamen, and that the INTREPID was the only vessel owned by the Shipowner.[21]

■ That the Plaintiff's injuries occurred off the coast of the United States is purely fortuitous, and a factor of minimal importance in supporting application of the Act. *See Moncada v. Lemuria Shipping Corp., supra* at 491 F.2d 472–473. Standing alone, we believe that it is not a substantial contact with the United States, and according-

---

**15.** See *Grammenos v. Lemos, supra,* at 457 F.2d 1072.

**16.** See Exhibit C, Appendix at 43–44a.

**17.** *See Moncada v. Lemuria Shipping Corp.,* 491 F.2d 470, 472 (2d Cir. 1974).

**18.** *See Lauritzen v. Larsen,* 345 U.S. 571, 576–7, 73 S.Ct. 921, 97 L.Ed. 1254 (1953); *Hellenic Lines Ltd. v. Rhoditis,* 398 U.S. 306, 308–309, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970); *cf. Bartholomew v. United Tankships, Inc.,* 263 F.2d

437, 441 (2d Cir.), *cert. denied,* 359 U.S. 1000, 79 S.Ct. 1138, 3 L.Ed.2d 1030 (1959).

**19.** *See Hellenic Lines Ltd. v. Rhoditis, supra,* at 398 U.S. 308–309, 90 S.Ct. 1731.

**20.** Shipowner's brief at 26.

**21.** This is of some importance in view of the possibility that a shipowner might have substantial contacts with the United States through the activity of a number of vessels.

ly we uphold the dismissal of Plaintiff's Jones Act claim on the ground of insufficiency.

■ The district court's conclusion that it was not a convenient forum for the litigation of Plaintiff's cause of action under the General Maritime Law may not be disturbed unless that court abused its discretion. *Fitzgerald v. Texaco, Inc.*, 521 F.2d 448, 451 (2d Cir. 1975), *cert. denied*, 423 U.S. 1052, 96 S.Ct. 781, 46 L.Ed.2d 641 (1976); *Fitzgerald v. Westland Marine Corp.*, 369 F.2d 499, 502 (2d Cir. 1966). Here, the dismissal would not operate to foreclose all possibility of a remedy,[22] nor is there any evidence that plaintiff would be put to unreasonable expense by litigating his claim in his native land, as opposed to a court in a country with which he apparently has no ties. *See, Fitzgerald v. Texaco, Inc., supra* at 521 F.2d at 451–452. Since Plaintiff received medical treatment for his injuries both in the United States and Greece, suit in either country will involve problems in the presentation of medical testimony. Moreover, although Plaintiff claims that the crewmen of the INTREPID are more easily deposed in this country, we discern nothing in the record which supports this claim. On the contrary, the seamen in question are all aliens and presumably have neither a residence in, nor substantial contact with, the United States. The availability of compulsory process is therefore questionable. *See, Fitzgerald v. Texaco, Inc., supra* at 451–452.

■ Balancing the factors contained in the record, we conclude that a dismissal of this essentially foreign lawsuit was well within the bounds of the district court's discretion. The Plaintiff's claims are more properly addressed to the courts of Greece.

Accordingly, the judgment of the district court is affirmed and the complaint is hereby dismissed.

---

**22.** Plaintiff's argument that Greek law would be less favorable to him is without merit, for "[a] district court has discretion to dismiss an action under the doctrine of *forum non conveniens* . . . even though the law applicable in the alternative forum may be less favorable to the plaintiff's chance of recovery." *Fitzgerald v. Texaco, Inc., supra,* at 521 F.2d 453 (citations omitted).