**Rogelio MANLUGON and Timothy Granaderos, Plaintiffs,**

v.

**A/S FACTO, Defendant.**

**No. 73 CIV. 4400(MP).**

United States District Court,
S. D. New York.

Aug. 23, 1976.

Howard & Howard by Austin A. Howard, Moore & Ricard by Jerome A. Moore, Detroit, Mich., Norman A. Olch, New York City, for plaintiffs.

Haight, Gardner, Poor & Havens, New York City, for defendant; by David P. H. Watson, New York City.

## OPINION

POLLACK, District Judge.

This case arises out of the claims of two foreign seamen for damages under the Jones Act, 46 U.S.C. § 688. The Court made a preliminary determination that the Jones Act is inapplicable to the instant action, and that the suit may proceed in the federal court solely as an admiralty matter triable to the Court pursuant to 28 U.S.C. § 1333 and Rule 9(h), Fed.R.Civ.P. The defendant has agreed with this determination. However, the plaintiffs now contend that this case should be administered under the Jones Act and they have submitted papers expressing their viewpoint with which defendant continues to disagree. Upon review of the matter the Court adheres to its earlier decision that the Jones Act does not apply to this case.

Plaintiffs are citizens of the Republic of the Philippines who claim they were injured while employed on board the M/S Stolt Falcon, a ship of Norwegian registry, while the vessel was in Lake Michigan on November 27, 1972. The defendant, A/S Facto, is a Norwegian corporation which owns a 40% interest in the ship; the remaining 60% is held by other corporate or individual citizens of Norway. The plaintiffs' employer and the managing owner or operator of the vessel, Stolt Nielsen Rederi A/S (hereafter, "Rederi"), is also a Norwegian corporation with its headquarters in Oslo.[1] No stockholder of either Rederi or any of the vessel's corporate owners, and none of the individual owners, is an American citizen or resident.

The applicability of the Jones Act depends on the substantiality of the contacts of the controversy with the United States. See *Koupetoris v. Konkar Intrepid Corp.*, 402 F.Supp. 951, 954 (S.D.N.Y.1975), aff'd, 535 F.2d 1392 (2d Cir., 1976). In this case the plaintiffs are foreign seamen, and the defendant and the other entities it represents in the action have no allegiance to the United States. Plaintiffs were hired in Manila by Rederi, and their fellow crewmen were citizens of Norway, the Philippines, and Argentina. In these circumstances, "the happenstance that the accident occurred while the [M/S Stolt Falcon] was in American waters—the only contact the controversy has with the United States—is insufficient to invoke the Jones Act." See *id.* at 954.

Nonetheless, plaintiffs argue that the Jones Act must apply because Rederi, the plaintiffs' employer, owned or controlled an American corporation named Stolt Nielsen Chartering, Inc., which acted as general agent for Rederi in the United States. Plaintiffs contend that this relationship confers an American base of operations on Rederi, and thus renders the Jones Act applicable. See *Hellenic Lines Ltd. v. Rhoditis*, 398 U.S. 306, 309, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970).

This argument has little merit. While the existence of a "certain identity"

---

1. Neither the ship's owners, other than A/S Facto, nor Rederi, the employer, have been named or served as defendants herein. Counsel for the defendant has advised the Court in an affidavit, however, that "in an effort to simplify the pleadings," he indicated to plaintiffs' former counsel that there was no need to add Rederi as a party-defendant because A/S Facto "would admit ownership, operation, control, and employment of plaintiffs." Consequently, in order to determine if the Jones Act is applicable to the action, the Court must examine the substantiality of the contacts with the United States of both the named defendant and of Rederi, despite the latter's absence from the caption.

between shipowner and operator or agent may be relevant to the propriety of service of process on the latter to obtain personal jurisdiction over the former, *see Koupetoris v. Konkar Intrepid Corp.*, 535 F.2d 1392, 1396 (2d Cir., 1976), it has no bearing, by itself, on the location of the shipowner's "base of operations." It is not uncommon for ships to employ land-based agents to service their needs in a number of ports; neither the mere use nor the mere ownership of such an agent in the United States by the shipowner suggests that the shipowner's base of operations is in the United States, and an extension of the base of operations doctrine to an enterprise whose link to the United States is this tenuous is not warranted. *See* G. Gilmore & C. Black, *The Law of Admiralty* 475 (1975).

To the extent that *Gomez v. Karavias U.S.A. Inc.*, 401 F.Supp. 104 (S.D.N.Y.1975), cited by plaintiffs, may indicate the contrary, this Court, with respect, declines to follow it. Furthermore, in *Antypas v. Compania Maritima San Basilio, S.A.*, 541 F.2d 307 (2d Cir., 1976), in which the Jones Act was held applicable, the agent was apparently subject to suit in its own right as the seamen's employer, and his activities on behalf of his principal were far more extensive than those shown on the record of the instant case. Unlike *Antypas*, there is no showing here that the ship in question, the M/S Stolt Falcon, "was operated by [the American agent] and * * * was under its direct control." *Id.* at 310.[2]

Although the Jones Act is thus inapplicable, defendant has not moved to dismiss the complaint, and the Court has determined in its discretion to retain jurisdiction over the controversy as an action in admiralty. *See Garis v. Compania Maritima San Basilio, S.A.*, 386 F.2d 155 (2d Cir., 1967). The rule of decision must be supplied by foreign law, however, for the general maritime law of the United States may no more be applied in a case of this type than may the Jones Act, since the same choice-of-law criteria are applicable to both, *see Romero v. International Terminal Operating Co.*, 358 U.S. 354, 382, 79 S.Ct. 468, 3 L.Ed.2d 368 (1959). Whether Norwegian or Philippine or some other foreign law is to be applied here has not been addressed by the parties and the resolution of that question will await a proper submission thereon.

In this connection, it is proper to note that the employment contracts between plaintiffs and Rederi provide in ¶ 11 that compensation benefits in the event of permanent incapacitation shall be paid in accordance with the Workmen's Compensation Law of the Republic of the Philippines, while the collective bargaining agreement which apparently is also relevant to the relationship between the parties provides in Art. VI, § 4 that the parties may seek to resolve disputes under the law of Norway. The dilemma posed by this apparent contradiction within the parties' own agreements is not resolved by the choice-of-law criteria applicable to maritime torts of *Lauritzen v. Larsen*, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953). The most important factors enunciated by the Supreme Court—the law of the flag, the allegiance of the injured, and the allegiance of the defendant—point simultaneously to the law of Norway and to the law of the Philippines. *Compare Rivadeneira v. Skibs A/S Snefonn*, 353 F.Supp. 1382 (S.D.N.Y.1973) (law of flag and written agreement control, not plaintiff's nationality) with *Nye v. A/S D/S Svendborg*, 358 F.Supp. 145 (S.D.N.Y.1973) (plaintiff's nationality controls, not law of flag; no agreement involved).

Thus, the most appropriate choice of law might be reached by implementing the terms of the parties' agreements literally, so that Philippine law shall apply only if plaintiffs prove that they have been "permanently incapacitated from work," while Norwegian law shall apply to the dispute if plaintiffs' injuries are not so completely disabling. This result would recognize the "legitimate interest [of each nation] that its

---

2. Nonetheless, plaintiffs are given leave to furnish any additional evidence in their possession, not heretofore submitted, which shows the requisite control of the ship by the American agent or other sufficient contacts with the United States of the employer or shipowner.

nationals and permanent inhabitants be not maimed or disabled from self-support," *Lauritzen v. Larsen, supra,* 345 U.S. at 586, 73 S.Ct. at 930, while not subjecting a ship "to a multitude of systems of law," *id.* at 588, 73 S.Ct. at 931, where the injury is of a less severe nature.

Suffice it for the present that, the action may proceed as a non-jury trial in admiralty, and the parties shall brief the question of the applicable foreign law as well as the content thereof not later than five days before the commencement of trial.

SO ORDERED.