**Walter RODE**

**v.**

**SEDCO, INC. and Southeastern Commonwealth Drilling, Ltd.**

**No. S–74–84–CA.**

United States District Court,
E. D. Texas,
Sherman Division.

April 22, 1975.

---

Franklin Jones, Jr., Jones, Jones & Baldwin, Marshall, Tex., for plaintiff.

John H. Hall, Strasburger, Price, Kelton, Martin & Unis, Dallas, Tex., for defendants.

## ORDER OVERRULING DEFENDANTS' MOTION TO DISMISS

JUSTICE, District Judge.

Plaintiff, Walter Rode, brought this civil action to recover damages for personal injuries allegedly sustained while he was a member of the crew of a vessel known as the SEDCO 135F. Plaintiff invokes the jurisdiction of this court under the provisions of the Jones Act, 46 U.S.C. § 688, and the general admiralty and maritime jurisdiction of the court. Various motions to dismiss have been filed by the defendants. Both defendants challenge the subject matter jurisdiction of this court, on the premise that the parties lack sufficient contacts with the United States to confer jurisdiction. Defendant Southeastern Commonwealth Drilling, Ltd. also challenges the *in personam* jurisdiction of this court on essentially the same grounds.

Rode was born in Demmin, East Germany, in 1939. In 1968, he came to the United States to live with relatives and to find work. At the time of his alleged accident, in 1971, plaintiff was assigned to the SEDCO 135F, which was operating in navigable waters of the North Sea, off the shore of Aberdeen, Scotland. The SEDCO 135F, at the time of the accident, was owned by Southeastern Commonwealth, a Canadian corporation. The · vessel was registered in and flew the flag of Canada. At all times material to this civil action, defendant Sedco,

Inc., owned ninety-five percent of the capital stock of defendant Southeastern Commonwealth. Sedco, Inc., is an American corporation, which is incorporated under the laws of the State of Texas, with a permit to do business in Texas. Its main offices are in Dallas; several of its corporate officers reside in Texas.

Any evaluation of jurisdictional "contacts" in an international admiralty case must begin with an examination of the principles enunciated by the Supreme Court in Lauritzen v. Larsen, 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953). *See also* Romero v. International Terminal Operating Co., 358 U.S. 354, 79 S. Ct. 468, 3 L.Ed.2d 368 (1953). In *Lauritzen,* the Court was called upon to determine whether the Jones Act,[1] which on its face gives a right of action to "any seaman" suffering injury in the course of employment, was applicable to the claims of the appellee. Larsen was a Danish seaman who, while visiting New York, joined the crew of a ship which was sailing under the flag and registry of Denmark, and which was owned by a Danish citizen. Larsen signed ship's articles, written in Danish, which provided that the rights of crew members would be governed by Danish law and by the employer's contract with the Danish Seamen's Union, of which Larsen was a member. The injuries occurred while the vessel was in Havana Harbor, within Cuban territorial waters.

The Jones Act, if read literally, supplies no jurisdictional limits based on nationality of seaman or vessel owner, place of injury, or other factors which would link a claim to the interests of the United States. Finding that such an

---

1. 46 U.S.C.A. 688 (1958), the Jones Act, provides as follows:

Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply; and in case of the death of any seaman as a result of any such personal injury the personal representative of such seaman may maintain an action for damages at law with the right of trial by jury, and in such action all statutes of the United States conferring or regulating the right of action for death in the case of railway employees shall be applicable. Jurisdiction in such actions shall be under the court of the district in which the defendant employer resides or in which his principal office is located.

expansive assertion of jurisdiction could not have been the congressional intent, the Court endeavored to put a judicial gloss on the statute which would delineate the jurisdictional reach of the Act. Thus, there emerged from *Lauritzen* seven basic criteria upon which to evaluate the motions presently before this court. These factors are: (1) place of the wrongful act; (2) law of the flag; (3) allegiance or domicile of the injured; (4) allegiance of the defendant shipowner; (5) place of contract; (6) inaccessibility of a foreign forum; and (7) law of the forum.

### 1. *Place of the Wrongful Act*

As noted by the court in *Lauritzen,* "[t]he test of location of the wrongful act or omission, however sufficient for torts ashore, is of limited application to shipboard torts, because of the varieties of legal authority over waters she may navigate." 345 U.S. at 583, 73 S.Ct. at 929. Here, as in *Lauritzen,* no party urges application of the law of the *lex loci delicti.*

### 2. *Law of the Flag*

The defendants contend that the proper forum for adjudication of Rode's claim is to be found in Canada. Under *Lauritzen,* and earlier authorities,[2] the fact that the SEDCO 135F sailed under the Canadian flag is highly significant: "Perhaps the most venerable and universal rule of maritime law relevant to our problem is that which gives cardinal importance to the law of the flag." 345 U.S. 584, 73 S.Ct. at 929.

Plaintiff seeks to diminish the impact of the vessel's Canadian registry by suggesting that the foreign registry was merely a convenience to the true owners. Depositions of Sedco and Southeastern executives indicate that the decision to register the vessel in Canada was made by the "legal department", and probably was based upon tax and other economic considerations. The argument that the foreign registry was a matter of "con-venience" is of significance in examining the allegiance of the shipowner, which is an important criterion under the *Lauritzen* approach. It does not, however, greatly undercut the basic pragmatic policy that "there must be some law on shipboard, that it cannot change at every change of waters, and no experience shows a better rule than that of the state that owns her." *Id.* at 585, 73 S.Ct. at 930. Clearly, the fact that the SEDCO 135F was under Canadian registry is a significant factor weighing against the assumption of jurisdiction by a court of the United States.

### 3. *Allegiance or Domicile of the Injured*

In *Lauritzen,* the Supreme Court noted that each nation has a legitimate interest in seeing that its "nationals and permanent inhabitants" not be "maimed or disabled from self-support." It further observed that some American courts had applied the Jones Act solely because injury was to an American citizen or domiciliary. *Id.* at 586, fn. 21, 73 S.Ct. 921. Rode, in his deposition taken on January 30, 1975, averred that he was scheduled to become a naturalized citizen of the United States on February 13, 1975. He further asserted that he "emigrated" to the United States in 1968, and that, although he was working out of the country for most of the time until the date of the alleged injury, he maintained his permanent residence with his relatives in Colorado. Southeastern's records apparently show the Colorado address to be the one given to the company by Rode before the injury as his "permanent residence." A social security number was assigned to Rode in 1968, and apparently deductions were made from his salary for income tax purposes, although he did not earn enough to require the filing of an income tax return. Thus, while Rode's domicile at the time of the alleged injury is not absolutely clear, from the pre-

2. *Cf.* United States v. Flores, 289 U.S. 137, 53 S.Ct. 580, 77 L.Ed. 1086 (1933).

ponderance of the evidence it appears that his "allegiance" was, and is, to the United States.

### 4. Allegiance of the Defendant Shipowner

The Supreme Court further observed in *Lauritzen* that "it is common knowledge that in recent years a practice has grown, particularly among American shipowners, to avoid stringent laws by seeking foreign registration eagerly offered by some countries. [Citations omitted.] Confronted with such operations, our courts on occasion have pressed beyond the formalities of more or less nominal foreign registration to enforce against American shipowners the obligations which our law places upon them. [Citations omitted.]." *Id.* at 587, 73 S.Ct. at 931.

In this case, it was shown that ninety-five percent of the capital stock of the foreign shipowner, Southeastern Commonwealth Drilling, Ltd., is owned by an American corporation, Sedco, Inc. Consequently, the American corporation's control is evident. It is also clear, from a reading of the depositions of corporate officers and managers, that a substantial interrelationship of corporate activity exists and that the nerve center of operations is Dallas, Texas. Rode's contract with Southeastern was, in fact, signed by Sedco's Vice President of Operations for Europe and Africa. This same company official authorizes expenditures for the SEDCO 135F. Other Sedco officials perform functions for Southeastern Drilling, and at least one important Sedco executive considers himself a "joint employee" of the two corporations. This "joint employee" had been the person responsible for procuring contracts for the SEDCO 135F. A perusal of the depositions makes it manifest that substantial management activities of Southeastern Commonwealth Drilling, Ltd., take place in Dallas, Texas. More importantly, it is evident that citizens of the United States are behind the financial operations of the vessel.

Thus, those ultimately most affected by the fate of the SEDCO 135F owe their allegiance to the United States.

### 5. Place of Contract

The *Lauritzen* court placed very little importance on the place of contract, declaring that, for seaman, the location is usually "fortuitous". *Id.* at 588, 73 S.Ct. 921. Rode came to Dallas for an interview concerning the job offered to him. It appears that the contract was negotiated and written in Dallas, Texas, and executed by the Southeastern agent in Dallas. Rode apparently signed the contract either in Scotland or on board the SEDCO 135F in the North Sea.

### 6 and 7. Inaccessibility of Foreign Forum and Law of the Forum

There is uncontradicted evidence from the defendants that plaintiff would have access to the Canadian courts for the relief to which he may be entitled, should jurisdiction be denied here. The plaintiff's choice of forum is of little consequence, if other sufficient contacts with the United States do not exist to support jurisdiction. While there may well be a difference between American and Canadian law as to limitation of liability, defendants have not shown that application of the Jones Act in this case would defeat an important Canadian policy. Thus, neither of these factors has been instrumental to the court's ruling.

The *Lauritzen* criteria have been applied and developed in subsequent decisions. Soon after the Supreme Court ruling, a New York federal district court was called upon to apply the *Lauritzen* guidelines to the following facts: The plaintiff was a Polish citizen, who resided in and had taken out citizenship papers in the United States. Further, he had "signed on" in the United States; but he executed ship's articles which recited that all rights and obligations were governed exclusively by the laws of Honduras. The vessel, which was under Honduran registry, was in a Panama harbor at the time of injury. The ship

was owned by a Honduran company, all of whose capital stock was owned by a United States company. The court found jurisdiction:

> [I]t . . . appears that if effect is to be given to the Jones Act it must be because of the United States domicile of the plaintiff and the United States ownership of the stock of the shipowner . . . The court should give effect to the nationality of the actual control of the ship particularly in a case like this where the claimant is domiciled in the United States.

Zielinski v. Empresa Hondurena deVapores, 113 F.Supp. 93, 94–95 (S.D.N.Y. 1953). *See also* Rodriquez v. Solor Shipping Ltd., 169 F.Supp. 79 (S.D.N.Y. 1958).

In Southern Cross Steamship Co. v. Firipis, 285 F.2d 651 (4th Cir. 1960), cert. denied, 365 U.S. 869, 81 S.Ct. 903, 5 L.Ed.2d 859 (1961), the Jones Act was applied where the vessel was flying the flag of Honduras and the nominal owner was a Liberian corporation, but twenty percent of the capital stock of the corporation belonged to an American. *Compare* Dassigienis v. Cosmos Carriers & Trading Corp., 442 F.2d 1016 (2d Cir. 1971), where none of the capital stock was owned by Americans. In *Firipis,* the court disregarded the "flag of convenience," and focused on actual control. *See also* Bartholomew v. Universe Tank Ships, Inc., 263 F.2d 437 (2d Cir. 1969), cert. denied, 359 U.S. 1000, 79 S.Ct. 1138, 3 L.Ed.2d 1030 (1959), where it was noted that

> [w]hat we now do is not to disregard the corporate entity to impose liability on the stockholders, but rather to consider a foreign corporation as if it were an American corporation pursuant to the liberal policies of a regulatory act. 263 F.2d at 442.

In *Bartholomew,* the court also found the plaintiff to be a "permanent inhabitant" and thus entitled to Jones Act benefits, despite his illegal entry for purposes of immigration and naturalization.

In 1970, the Supreme Court re-addressed the *Lauritzen* standards in Hellenic Lines Ltd. v. Rhoditis, 398 U.S. 306, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970). The revelant facts were as follows: Plaintiff was a Greek seaman, injured while his vessel was in the Port of New Orleans. The ship was under Greek registry. Plaintiff had signed a contract in Greece, which provided for Greek adjudication of claims arising thereunder. The ship, which regularly stopped in American ports, was owned by a Greek corporation. The corporation was, in turn, owned by a Greek citizen who was a United States resident alien. He managed the corporation from New York.

In *Rhoditis,* the court recognized that the shipowner's *base of operations* is a further factor to add to the *Lauritzen* seven, reaffirming the right of a resident alien to the protection of due process. In finding jurisdiction, the Court stated:

> If, as stated in Bartholomew v. Universe Tankships, Inc., 263 F.2d 437 (supra), the liberal purposes of the Jones Act are to be effectuated, the facade of the operation must be considered as minor, compared with the real nature of the operation and a cold objective look at the actual operational contacts that this ship and this owner have with the United States. 398 U.S. at 310, 90 S.Ct. at 1735.

*See also* Moncada v. Lemuria Shipping Corp., 491 F.2d 470 (2d Cir. 1974).

■ It is not the function of this court, in ruling upon defendants' motions to dismiss, "to weigh or balance present against absent contacts, but merely to determine whether the contacts which are present are substantial." Moncada v. Lemuria Shipping Corp., 491 F.2d at 472. It having been determined that the allegiance of both the plaintiff and the shareholders of the defendant corporations is to the United States, that substantial management and control of the vessel emanate from the United States, and that the employment contract was

partially executed in the United States, it is evident that substantial jurisdictional contacts exist, both as to the subject matter and defendant Southeastern Commonwealth Drilling, Ltd. Accordingly, it is

Ordered that defendants' motions to dismiss for lack of jurisdiction be, and they are hereby, denied.