Gonzalo SOSA, Plaintiff-Appellee,

v.

**M/V LAGO IZABAL, her engines, etc. and Tracey Navigation Co., Ltd., Defendants,**

Tracey Navigation Co., Ltd.,
Defendant-Appellant.

No. 83–2199.

United States Court of Appeals,
Fifth Circuit.

July 19, 1984.

---

Ross, Griggs & Harrison, James E. Ross, J. Douglas Sutter, Houston, Tex., for defendant-appellant.

Stevens F. Mafrige, Houston, Tex., Arnold R. Ginsberg, Charles R. Lipcon, Miami, Fla., for plaintiff-appellee.

Before BROWN, GEE and RUBIN, Circuit Judges.

GEE, Circuit Judge:

Plaintiff Gonzalo Sosa, a Mexican seaman, brought this action against his employer, Tracey Navigation Co. ("Tracey"), and its vessel, the M/V LAGO IZABAL, for damages allegedly sustained as a result of the unseaworthiness of the defendant vessel. Tracey appeals from the district court's finding of unseaworthiness and award of substantial damages.

On January 21, 1980, the engine of the M/V LAGO IZABAL exploded as the ship attempted to dock at the Adams Terminal in Houston. Sosa, who was in the engine room at the time of the explosion, was covered with burning diesel fuel. As a result, over 80 percent of Sosa's body was burned; one-half of these burns were third degree.

The district court held that the vessel was unseaworthy and that its unseaworthiness proximately caused Sosa's injuries. The court awarded damages as follows:

(1) $19,723 for past lost earnings,

(2) $2,157,376 for future lost earning capacity,

(3) $42,547 for past medical expenses,

(4) $42,300 for future recommended medical procedures,

(5) $10,937,094.51 for future annual expenses,

(6) $10,000,000 for pain and suffering, and

(7) $2,644,863.26 for prejudgment interest.

From this judgment, Tracey appeals.

## I.  *Choice of Law*

■ Tracey argues that the district court erred in applying American law to this case and that the case thus should have been dismissed for lack of subject matter jurisdiction.  Tracey confuses the concepts of subject matter jurisdiction and choice of law.  Admiralty jurisdiction exists wherever the injuries occur on navigable water in connection with the navigation of a vessel.  *Fisher v. Danos,* 671 F.2d 904, 906 (5th Cir.), *cert. denied sub nom. Gulf Oil Corp. v. Fisher,* 459 U.S. 840, 103 S.Ct. 89, 74 L.Ed.2d 83 (1982); *Kelly v. Smith,* 485 F.2d 520, 524 (5th Cir.1973), *cert. denied sub nom. Chicot Land Co. v. Kelly,* 416 U.S. 969, 94 S.Ct. 1991, 40 L.Ed.2d 558 (1974).  Sosa was injured on navigable water in connection with the navigation of the M/V LAGO IZABAL; admiralty jurisdiction is present.  Consequently, the only issue is whether the district court should have applied American or foreign maritime law.  See G. Gilmore & C. Black, *The Law of Admiralty* 473 (2d ed. 1975).[1]

■ In deciding whether to apply American or foreign law, we examine the eight factors discussed in *Lauritzen v. Larsen,* 345 U.S. 571, 73 S.Ct. 921, 97 L.Ed. 1254 (1953), and *Hellenic Lines, Ltd. v. Rhoditis,* 398 U.S. 306, 90 S.Ct. 1731, 26 L.Ed.2d 252 (1970).[2]  As applied in our case, these are:

| | |
|---|---|
| (1) Place of the wrong | United States, |
| (2) Law of the flag | Cayman Islands, |
| (3) Domicile of injured seaman | At the time of injury, Mexico; currently, United States, |
| (4) Allegiance of shipowner | Cayman Island corporation, over 90 percent of stock is owned by United States residents, |
| (5) Place of contract | Mexico, |
| (6) Accessibility of foreign forum | Mexican courts are available, |
| (7) Law of the forum | Inapplicable when defendant is involuntarily made a party, |
| (8) Base of operations | United States. |

In examining these factors, we do not "merely add up the scores for and against, for the test is neither arithmetic nor mechanistic."  *DeOliveira v. Delta Marine Drilling Co.,* 707 F.2d 843, 845 (5th Cir. 1983) (on rehearing).  The trial court's choice of law is reviewed by us *de novo.* *Diaz v. Humboldt,* 722 F.2d 1216, 1218 (5th Cir.1984).

■ Tracey argues that the district court was clearly erroneous in finding that the place of the wrong was in the United States.  While conceding that Sosa was actually injured in the Houston Ship Channel, Tracey maintains that the wrongful act "occurred" in Mexico before the vessel began its voyage to Houston because the Chief Engineer and Master of the vessel were made aware *while in Mexico* that the vessel's engine was in need of repair.  While this may indicate that the wrongful acts occurred partly in Mexico, it does not show that the wrongful acts occurred *exclusively* in Mexico.  Indeed, this unseaworthy condition—the unrepaired, damaged engine—was present throughout the voyage to Houston.  Moreover, the actual use of the engine, an unseaworthy condition independent from the failure to repair, occurred only in Houston.  Thus, many of the wrongful acts took place in the United States and this weighs in favor of applying American law.

■ Tracey also contends that the district court's finding of an American base of operations was clearly erroneous.  We have held that an American base of opera-

---

**1.**  Sosa notes that Tracey failed to move to dismiss for forum non conveniens at trial.  While this waives the right to argue that the district court should have dismissed for forum non conveniens, it should not affect the ability of Tracey to argue that the district court incorrectly chose which law to apply.

**2.**  *Lauritzen* and *Rhoditis* apply the choice-of-law factors in Jones Act cases.  In *Romero v. International Terminal Operating Co.,* 358 U.S. 354, 382, 79 S.Ct. 468, 485, 3 L.Ed.2d 368 (1959), the Supreme Court applied the same factors to a case arising out of general maritime law.

tions is shown when a foreign owner is engaged in extensive business operations in this country. *Diaz*, 722 F.2d at 1218. The necessary operational contacts with the United States must relate to both the ship-owner and the ship, *Fajardo v. Tidewater, Inc.*, 707 F.2d 858, 862 (5th Cir.1983), and must be substantial, *Diaz*, 722 F.2d at 1218. The district court's determination of base of operations is a factual finding not to be disturbed on review unless clearly erroneous. *Fisher v. Agios Nicolaos V*, 628 F.2d 308, 318 (5th Cir.1980), *cert. denied sub nom. Valmas Bros. Shipping, S.A. v. Fisher*, 454 U.S. 816, 102 S.Ct. 92, 70 L.Ed.2d 84 (1981).

Tracey's answers to plaintiff's interrogatories along with the testimony of Arriaga, a Tracey shareholder, conclusively establish substantial operational contacts:

(1) the M/V LAGO IZABAL regularly loaded cargo in Houston, *see Moncado v. Lemuria Shipping Corp.*, 491 F.2d 470, 473 (2d Cir.1974), *cert. denied*, 417 U.S. 947, 94 S.Ct. 3072, 41 L.Ed.2d 667 (1974) (base of operations established in part by frequency of shipowner's voyages beginning or ending in American ports);

(2) all operations for the management of the vessel were conducted out of a Houston office, *see Diaz*, 722 F.2d at 1218 ("[a]n important consideration for determining the base of operations is the location at which the day-to-day operating activities are conducted");

(3) actual maintenance of the vessel, other than that done by the crew, was performed in Houston;

(4) the vessel's shipping agent was a corporation located in Houston.

Consequently, the trial judge was not clearly erroneous in finding a Houston base of operations.

An examination of the *Lauritzen/Rhoditis* factors demonstrates that American law was properly applied. Aside from the American place of wrongful act and base of operations, we note that over 90% of Tracey's stockholders were United States residents; we look through the facade of foreign incorporation to the American ownership behind it. *Rainbow Line, Inc. v. M/V TEQUILA*, 480 F.2d 1024, 1027 (2d Cir.1973); *Bartholomew v. Universe Tankships, Inc.*, 263 F.2d 437, 442 (2d Cir.1959). *Accord, Rode v. Sedco, Inc.*, 394 F.Supp. 206, 209 (E.D.Tex.1975). We hold that these factors support the district court's application of American law.[3]

## II. *Damages*

### A. *Sosa's refusal to accept Tracey's offer of medical treatment.*

Tracey argues that the district court erred as a matter of law in awarding past and future medical expenses to Sosa because Sosa refused the medical treatment offered by Tracey in Guadalajara. It cites *Oswalt v. Williamson Towing Co.*, 488 F.2d 51, 53 (5th Cir.1974), for the proposition that a seaman who refuses medical treatment proffered by the vessel owner cannot hold the vessel owner liable for maintenance and cure. Here, however, the district court did not award maintenance and cure but, rather, awarded damages resulting from the unseaworthiness of the M/V LAGO IZABAL. Consequently, Sosa was not required to accept the medical treatment offered by Tracey.

### B. *Effect of inflation on lost future earnings.*

Tracey argues that the district court failed to follow our holding in *Culver v. Slater Boat Co.*, 688 F.2d 280 (5th Cir. 1982) (*Culver I*),[4] in adjusting the award of

---

**3.** Tracey suggests that we consider an additional factor it calls "limited involvement." Using this factor, we would examine the nationality of the crew members (here, all foreign) and the number of vessels owned by defendant (Tracey owned only the M/V LAGO IZABAL). *See, e.g., Koupetoris v. Konkar Intrepid Corp.*, 535 F.2d 1392, 1396 (2d Cir.1976). We need not decide today whether "limited involvement" is an ap-

propriate factor for consideration in choice-of-law issues; even were we to consider this additional factor here, the other factors discussed above would still justify the application of American law.

**4.** *Culver I* was modified in *Culver v. Slater Boat Co.*, 722 F.2d 114 (5th Cir.1983) (*Culver II*). *Culver II* does not apply, however, to cases in

lost future earnings to take into account the effects of inflation. *Culver I* held that a trial judge could consider inflation in determining an appropriate damage award. One method of calculating the effect of inflation, approved by the *Culver I* court, requires a three step calculation:

(1) the fact finder projects plaintiff's annual earnings for the remainder of his estimated income-generating years using the average annual rate of increase in his own salary in the years prior to the incapacitating event, or, in the alternative, using the average wage increase of workers nationally or in the decedent's occupation and geographic area;

(2) the above lifetime earnings are converted to an average annual income by dividing the lump sum by the number of income-generating years;

(3) the present value of plaintiff's average annual income is then computed by determining how much money must be invested at the present time to yield each year the average income for the remaining income-generating years.

*Culver I,* 688 F.2d at 309.

The district court properly followed this formula in ascertaining the effect of inflation on Sosa's future earnings. Using a growth rate of 8.10% (the average annual rate of growth of compensation for American workers of all occupations), the district judge determined that Sosa's projected annual earnings would be $4,734,941. He then determined Sosa's average annual income and discounted this figure to present value at a rate of 6.98%. This figure, when combined with Sosa's pretrial loss of income, equalled $1,113,878.

Tracey complains, however, that the 8.10% growth rate does not apply to Mexican seamen. Plaintiff's economics expert, Dr. Allen, testified that the 8.10% rate would reflect the growth rate of compensation for Mexican seamen in that "the wage rates of individuals in different countries will be determined or influenced by ...

factors" similar to those used in rates for American workers. Tracey offered *no evidence* contradicting this testimony. Consequently, we believe the district court was not clearly erroneous in applying the 8.10% rate to Sosa and we affirm its findings of lost future earnings.

C. *Benchmark figure for future medical expenses.*

▮ Tracey also objects to the district court's use of Dr. Allen's "benchmark" figure for calculating the present value of Sosa's future medical expenses. Dr. Allen's benchmark figure of $62,657 represents the present value of $1000 annual medical expenses; the court multiplied Sosa's annual medical expenses of $174,555.03 by the benchmark figure ($62,657/1000) to reach a figure of $10,937,094.51 representing the present value of Sosa's future annual medical expenses.

Dr. Allen determined this benchmark figure by computing the total cost of providing $1000 worth of medical services over Sosa's lifetime (assuming that the cost of medical services will grow at an annual rate of 8.44%), and then by discounting this total at a 6.98% rate to reach its present value. Tracey provides no evidence to challenge Dr. Allen's figures, and its claim that the 8.44% growth rate is somehow "duplicative" is frivolous.

D. *Tax consequences of future earnings award.*

▮ The district court awarded $1,113,878 for lost future earnings. It then adjusted the award to $2,157,376 to take into account the amount of tax Sosa will have to pay on the interest earned on the lump sum award. Tracey contends this is error.

The Supreme Court has held that a wage earner's income tax is a relevant factor in calculating his estimated future earnings. *Norfolk & Western Railway Co. v. Liepelt,* 444 U.S. 490, 493–94, 100 S.Ct. 755, 757–758, 62 L.Ed.2d 689 (1980). Thus, one

which a trial judge made findings of fact fixing damages pursuant to the principles of *Culver I* before December 22, 1983, the date on which

*Culver II* was published. *Id.* at 123. The instant case, decided on December 23, 1982, was governed by *Culver I.*

appropriate method of taking this factor into account is by increasing the lump sum damage award by the amount of income tax that would have to be paid on the earnings of the award. *DeLucca v. United States,* 670 F.2d 843, 845 (9th Cir.1982); *Hollinger v. United States,* 651 F.2d 636, 642 (9th Cir.1981).[5]

Tracey also argues that the district court erred in basing the tax adjustment on a 50% rate; Tracey maintains that Sosa would be taxed at a 30% rate as a non-resident alien. 26 U.S.C.A. § 871(a)(1) (1982). The district court found, however, that Sosa intends to reside permanently in the United States and that he will be permitted to do so. Amended Memorandum and Order at 20. Thus, the district court properly taxed Sosa at a 50% rate, that for United States residents with a sufficient amount of income. 26 U.S.C.A. § 1 (1984).

E. *Damage award based on American standards.*

■ Tracey maintains that the trial court erred in awarding damages to Sosa based on American standards. This contention is frivolous. The award for past lost earnings and future lost earning capacity was based on the " 'current rates of pay being paid to seamen and to engineers' in Mexico." Amended Finding of Fact No. 33. The award for past and future medical expenses was, however, based on American standards; the district court was correct in so doing in that it specifically found that Sosa would not receive adequate medical care in Mexico. Amended Memorandum and Order at 22.

F. *Rehabilitation expenses.*

The district court awarded Sosa $5,995.03 per year for rehabilitation expenses. These expenses consist of 39 items, such as a speaker telephone service, an electric toothbrush, and a beverage holder, that will allow Sosa to perform certain simple tasks on his own and "make him more comfortable despite his severe injuries." Finding of Fact No. 26. Tracey argues that this award duplicates the $10,000,000 award for pain and suffering, bodily injury, mental anguish, and loss of the capacity for the enjoyment of life.

■ A seaman who is injured as a result of a vessel's unseaworthiness is entitled to recover damages "for his loss of earnings, past and prospective, for medical expenses reasonably incurred in the past and to be incurred in the future, and also an additional sum on account of his physical injuries and for pain and suffering." *Bartholomew v. Universe Tankships, Inc.,* 279 F.2d 911, 916 (2d Cir.1960). *Accord Downie v. United States Lines Co.,* 359 F.2d 344, 347 (3d Cir.), *cert. denied,* 385 U.S. 897, 87 S.Ct. 201, 17 L.Ed.2d 130 (1966). To the extent that these rehabilitative items are not medical expenses but merely serve to alleviate physical suffering or mental anguish, they duplicate the $10,000,000 pain and suffering award. Some items, such as the therapy weights, certainly seem to be medical expenses; others, such as the electric toothbrush, most likely serve only to alleviate suffering. Thus, we remand for the district court to determine which items are compensable medical expenses and which duplicate the award for pain and suffering.[6]

G. *Pain and suffering.*

The district court awarded $10,000,000 for "pain and suffering, bodily injury, disability, mental anguish, loss of capacity for enjoyment of life experienced in the past as

---

**5.** In *Flannery v. United States,* 718 F.2d 108, 112 (4th Cir.1983), the Fourth Circuit refused to adjust a lump sum damage award to counter income tax effects because the fiduciary handling the funds "could invest them in whole or in part in tax exempt securities." This approach would also be acceptable to us if the district court took into account the lower interest rates of tax exempt securities when fashioning the damage award. In sum, we will approve any reasonably safe arrangement that will produce an after-tax income equivalent to that lost by the plaintiff.

**6.** Tracey also argues that these rehabilitation expenses duplicate the award for 24-hour-a-day nursing services. We agree with the trial court that these items "would not eliminate plaintiff's need for 24-hour-a-day care." Amended Finding of Fact No. 26.

well as to be experienced in the future and disfigurement." Tracey maintains that this award is excessive. We agree.

A trial judge's assessment of damages is a finding of fact and is reviewed under the clearly erroneous standard. *Caldarera v. Eastern Airlines, Inc.*, 705 F.2d 778, 783 (5th Cir.1983); *Felder v. United States*, 543 F.2d 657, 663 (9th Cir.1976). A verdict is excessive if it is greater than the maximum amount a trier of fact could properly have awarded. *Caldarera*, 705 F.2d at 784.

Our reassessment of damages is "inherently subjective in large part, involving the interplay of experience and emotions as well as calculation;" "[t]he sky is simply not the limit for [damage awards]." *Id.* On the other hand, a verdict is not excessive simply because we would have awarded a lesser sum. *Batchkowsky v. Penn Central Co.*, 525 F.2d 1121, 1124 (2d Cir.1975). Finally, we do not determine excessiveness by comparing verdicts rendered in different cases; each case must be determined on its own facts. *Allen v. Seacoast Products, Inc.*, 623 F.2d 355, 364 (5th Cir.1980).

There is no doubt that Mr. Sosa sustained catastrophic injuries. Over 80 percent of his body was burned. The fire destroyed his sweat glands, hair follicles, and most of his nerve endings. His hands are fixed in a claw position, and he thus requires a nurse to assist him with most daily tasks and hygienic functions. Sosa is extremely sensitive to heat and suffers from constant itching.

Nevertheless, we conclude that the $10,-000,000 award is beyond the maximum possible recovery for these injuries. Mr. Sosa has been adequately compensated for his medical needs and his award for lost future earning capacity makes him economically secure. Moreover, although Sosa will suffer throughout his life from itching and sensitivity, as well as from mental anguish, he does not have to endure the sort of continuing excruciating pain that might support an award of this magnitude.

"Our power to grant a remittitur is the same as that of the district court." *Caldarera*, 705 F.2d at 784. We determine the size of the remittitur in accordance with our maximum recovery rule, which requires that the verdict be reduced to the maximum amount the finder of fact could properly have awarded. *Id.* We believe that an award of $1,000,000 approaches the maximum amount. Nevertheless, we choose not to enter a remittitur, but rather to remand to allow the trial judge to reconsider his award based on the considerations we have set forth here. An amount awarded for pain and suffering depends to a great extent "on the trial court's observation of the plaintiff and its subjective determination of the amount needed to achieve full compensation." *Hyde v. Chevron USA, Inc.*, 697 F.2d 614, 632 (5th Cir.1983). *See also Keyes v. Lauga*, 635 F.2d 330, 336 (5th Cir.1981) (remand for reconsideration of remittitur because district judge, "having had the opportunity to observe the trial, is in a better position than [the appellate court] to evaluate the subjective elements of damage suffered by [the plaintiff]"). Thus, we vacate the award for pain and suffering and remand for reconsideration by the trial judge.

### H. *Findings of fact.*

Tracey maintains that several findings of fact are clearly erroneous. Upon a review of the record, we are not left with the definite and firm conviction that a mistake has been committed. *See Onaway Transportation Co. v. Offshore Tugs, Inc.*, 695 F.2d 197, 200 (5th Cir.1983). Indeed, these findings are *amply* supported by the record.

### I. *Nurse qualifications.*

Finally, Tracey argues that the district court erred in finding that Sosa will have to be cared for by either a Licensed Vocational Nurse (LVN) or a Registered Nurse (RN). We find no error. In Texas, no person may practice professional nursing unless registered by the Board of Nurse Examiners. Tex.Civ.Stat.Ann. Art. 4518 § 4 (Vernon's 1976). LVN's are ex-

empted from this rule. Tex.Civ.Stat.Ann. Art. 4528 (Vernon's 1976). "Professional nursing" is defined as the performance for compensation of any nursing act, including "the administration of medication or treatments as provided by a licensed physician." Tex.Civ.Stat.Ann. Art. 4518 § 5 (Vernon's Supp.1984). Thus, because the court found that Sosa will require medication for the rest of his life (Amended Finding of Fact No. 21) and that Sosa is not capable of taking the medication by himself (Finding of Fact No. 15), the district court did not err in awarding damages for the cost of an RN or LVN.

Thus, we vacate the awards for rehabilitative expenses and pain and suffering and remand for proceedings consistent with this opinion. In all other respects, the judgment of the district court is affirmed.

VACATED in part, AFFIRMED in part, and REMANDED in part.