479 So.2d 1020 (1985)
Leon EDMOND, et ux., Plaintiffs-Appellees,
v.
MARKET BASKET STORES, INC., et al., Defendants-Appellants.
No. 84-944.
Court of Appeal of Louisiana, Third Circuit.
December 11, 1985.
*1021 Woodley Barnett, Cox, Williams, Fenet & Palmer, Clayton Davis, Lake Charles, for defendants-appellants.
Payton R. Covington, Lake Charles, for plaintiffs-appellees.
Before GUIDRY, DOUCET and LABORDE, JJ.
GUIDRY, Judge.
Plaintiff, Mary Edmond, sustained personal injuries when she slipped on a strawberry and fell to her knees while shopping in defendant's grocery store. Mary and her husband, Leon Edmond, brought suit against Market Basket Stores, Inc. and its liability insurer, Cherokee Insurance Company. The trial court rendered judgment in favor of plaintiff for past medical expenses and $23,000.00 in general damages. Defendants suspensively appeal that judgment.
Defendants present the following specifications of error:
1. The trial court erred in assessing any liability against Market Basket Stores, Inc.;
2. The trial court erred in failing to find Mary Edmond contributorily negligent; and,
3. The trial court's award of $23,000.00 in general damages was excessive.

FACTS
On May 12, 1982, Mary and Leon Edmond went into Market Basket Store # 19 on Oak Park Boulevard in Lake Charles for the sole purpose of purchasing some onions. Mary walked straight towards the produce section of the store, with her husband following behind her. Before reaching the onions, Mary slipped on a strawberry and fell to the floor, landing on her knees.[1]
As a result of the fall, Mary allegedly sustained injury to both of her knees. At the time of the mishap, she complained of these injuries to the head of the produce department and to the store manager. Mary testified that she went to the hospital that afternoon to have her knees x-rayed because of the pain she was experiencing. There is no record from the hospital of such x-rays. Mary stated that because her granddaughter worked at the hospital she was not billed for the x-rays.
In August of 1982, Mary sustained additional injuries as a result of her injured knees. As she was stepping down from a street curb, her left knee gave out causing her to fall to the ground. As a result of this fall, she fractured the fifth metatarsal bone of her right foot. Following this injury, Mary remained off of her feet for three weeks and walked on crutches for an additional four weeks. She also developed a ganglion on her right ankle.

LIABILITY
Appellants claim that the trial court erred in finding Market Basket liable in the instant case, or alternatively, in failing to *1022 find Mary Edmond contributorily negligent.
In his written reasons for judgment dated June 15, 1984, the trial judge relied on the standard of care required of storekeepers enunciated in Kavlich v. Kramer, 315 So.2d 282 (La.1975). In Kavlich, our Supreme Court set forth the duty of a storekeeper as follows:
"A storekeeper owes an affirmative duty to those who use his premises to exercise reasonable care to keep his aisles, passageways and floors in a safe condition. Calamari v. Winn Dixie of Louisiana, Inc., 300 So.2d 653 (La.App. 4th Cir.1974); Tripkovich v. Winn-Dixie Louisiana, Inc., 284 So.2d 80 (La.App. 4th Cir.1973); Bartell v. Serio, 180 So. 460 (La.App.Orl.Cir.1938). This duty includes a reasonable effort to keep objects off of the floor which might give rise to a slip and fall. Through numerous cases Louisiana courts have reviewed occasions when fluids, pieces of fruit and vegetable, and other similar debris have caused a customer to slip, fall and be injured. See, e.g., McCauley v. Nicholas, 297 So.2d 914 (La.App. 1st Cir.1974); Barker v. Great Atlantic & Pacific Tea Co., 230 So.2d 925 (La.App. 1st Cir.1970); Frederic v. Winn-Dixie Louisiana, Inc., 227 So.2d 387 (La.App. 4th Cir.1969)."
The Supreme Court elaborated on this duty in Gonzales v. Winn-Dixie Louisiana, Inc., 326 So.2d 486 (La.1976), as follows:
"The circumstances that determine the reasonableness of protective measures include the type and volume of merchandise, the type of display, the floor space utilized for customer service, the nature of customer service, and the volume of business. As we recently noted, the self-service grocery system requires customers to focus their attention on the shelves and to handle merchandise. The system increases the risk of harm from objects dropped on the floor by customers and, correspondingly, the duty to minimize the risk by frequent inspections and cleanups. See Kavlich v. Kramer, supra; Prosser, Law of Torts, § 56 p. 349 (4th ed.1971)."
Once an injured store patron establishes that he encountered a foreign substance on the floor of the store which caused him to slip and fall, the burden of proof then shifts to the storekeeper to go forward with the evidence to exculpate itself from the presumption that it was negligent. Kavlich v. Kramer, supra.
In the instant case, the trial court found that plaintiff clearly established that there were strawberries on the floor of the Market Basket in the produce section; she did not see the strawberries prior to her fall; and, when she stepped on the strawberries, she slipped, fell and sustained injury. We find that the record clearly supports this finding. The trial court next concluded that Market Basket Store # 19 did not succeed in exculpating itself from negligence. We likewise find this conclusion supported by the record.
The record reflects that less than five minutes prior to plaintiff's fall, a pint of strawberries was spilled on the floor of the produce section. Christian Martin, an employee of Market Basket, testified that he cleaned up the spilled strawberries. He stated that, "...and as far as I know, I got every one of them I could find." He testified that he inspected the area after the clean-up and that there were no berries or moisture remaining on the floor. The evidence also established that company policy requires the aisles to be frequently checked for obstructions or hazardous materials on the floor by Market Basket employees. Martin testified that he usually checks the aisles in the produce department about four times an hour.
George Daigle, the produce department head at Market Basket, testified that he was in the produce department at the time of the accident. He claims that he is in the habit of looking for debris on the floor in his department and had not noticed anything on the floor just prior to the accident. He did admit that after plaintiff's fall he found a mashed strawberry.
*1023 The trial judge apparently determined that the prior strawberry spill was not adequately cleaned up resulting in at least one strawberry being left on the floor, posing a hazard to customers. We find this inference to be reasonable. We conclude, as did the trial court, that defendant's employee was negligent in failing to remove all of the spilled strawberries from the store's floor. Thus, defendant did not exculpate itself from the presumption that its negligence was a cause in fact of plaintiff's injuries.
Appellants next contend that plaintiff was contributorily negligent in not watching where she was walking. Appellants argue that because plaintiff was in the store to purchase only onions and knew exactly where the onions were located, she would not have been distracted by store displays and should have been watching where she was walking. We reject this argument.
While it is true that plaintiff was shopping only for onions and was walking straight for the onion bins, she was not obliged to make specific observations of the floor before taking each step. Whittaker v. Schwegmann Brothers Giant Supermarkets, Inc., 334 So.2d 756 (La.App. 4th Cir.1976), writ denied, 338 So.2d 300 (La.1976). Additionally, plaintiff's intention to purchase only onions does not negate the fact that the store displays could have averted her attention. As stated in Serean v. Schwegmann Brothers Giant Supermarkets, Inc., 405 So.2d 553 (La. App. 4th Cir.1981), "...shoppers are attracted by displays of merchandise, even merchandise that the shopper had not previously intended to buy. The storekeeper cannot seek for itself the benefit of impulse buying from those displays while arguing that the shopper has a duty not to look at those displays." Therefore, we agree with the trial court that plaintiff was not contributorily negligent.

DAMAGES
Appellants' final contention on appeal is that the trial court erred in awarding plaintiff $23,000.00 in general damages.
Mary was 66 years old at the time of the accident and in good health. She had no previous injuries to her knees. Following her injury, she was seen by Dr. William Akins, an orthopedic surgeon in Lake Charles. Dr. Akins testified that his initial examination of Mary on June 15, 1982 revealed a mild crepitus (crunching) sensation in the left knee. Plaintiff complained of pain in the front part of both knees. Dr. Akins observed no swelling or instability of the knees. The x-rays also showed no bony abnormalities nor arthritic changes. He noted that Mary walked normally and had full range of motion in her knees. The ligaments in her knees appeared to be functioning satisfactorily, although Mary complained of pain when he touched her knees. Dr. Akins concluded that Mary sustained injury to the soft tissue of her knees and that it could take from 12-18 months to clear up. He suggested a regime of physical therapy.
Mary underwent physical therapy treatment at the Lake Charles Physical Therapy Clinic for two weeks, from June 21, 1982 until July 2, 1982. Mary contends that the physical therapy relieved her pain for only a short time.
On August 30, 1982, Mary injured her right foot and ankle when her left knee gave out on her causing her to fall. Dr. Akins opined that her foot injury was directly related to the instability of her knees caused by her fall in May of 1982. Dr. Akins examined Mary in September of 1982 and found that she had fractured the base of the fifth metatarsal bone of her right foot. He noted significant pain and swelling in the outer part of her right foot and ankle, with tenderness at the base of her right foot. Dr. Akins opined that Mary would continue to suffer from her right foot for about six weeks, and that her foot would be symptomatic for approximately two months. Mary also complained of weakness in her left knee, although Dr. Akins found no swelling or evidence of instability in that knee. She had full range *1024 of motion and the crepitus sensation no longer existed.
Mary remained off of her feet for three weeks following the August 1982 fall and then walked with crutches for an additional four weeks. She went to see Dr. Akins again on October 6, 1982. At this time, Dr. Akins noted that the pain and swelling in the right foot had decreased and that the fracture was healing satisfactorily. He anticipated complete healing of the foot without residual symptoms. There remained tenderness and residual swelling in the right foot and Mary complained of pain in that foot.
Mary returned to Dr. Akins in February 1983 complaining of pain in her right ankle, in the arch of her right foot and in the kneecap region of her right knee, especially with changes in the weather. Dr. Akins observed no swelling or evidence of ligament damage in the right knee but did note the returned presence of a crepitus sensation in the left side of the left knee. X-rays of the knee indicated no degeneration or deterioration in the knee. Dr. Akins opined that Mary would continue to have future intermittent difficulty in the left knee due to the soft tissue damage, although he saw no need for surgery. He gave Mary a cortisone injection in the left knee to relieve her pain. He also noted the possibility that the knee could suffer further arthritic degeneration.
As to the pain in Mary's foot and ankle, Dr. Akins x-rayed the foot and found that the fracture was adequately healed. Her foot was freely movable and was not restricted by pain. The x-rays of Mary's right ankle revealed probable deformity of the articular surface. There was swelling at the top and outer part of her foot and Dr. Akins noted a ganglion at the front part of the joint between the tibia bone and fibula bone at ankle level. However, Dr. Akins found full range of motion in the ankle and no evidence of ligament damage.
Dr. Akins' final examination of Mary took place on May 11, 1983. Mary continued to complain of pain in the front part of her knees, especially with stair climbing or prolonged sitting. Dr. Akins' examination revealed no swelling or instability of the knees, although there was still crepitus with motion between the kneecap and thighbone. The fifth metatarsal of the right foot was non-tender to firm touch and the ganglion, although still present, was decreased in size. Mary's ankle was not particularly swollen. Dr. Akins concluded that no future degenerative changes of any significance should occur from Mary's injuries. He did not anticipate the need for surgery on Mary's knees.
Mary was also examined by Dr. Norman P. Morin on December 23, 1983, at the request of defendants. A report by Dr. Morin, also an orthopedic surgeon, was entered in evidence. The report established that, on the day of the examination, Mary was complaining of pain in her knees and right foot. Dr. Morin noted that Mary walked without a limp. He found a 7° bilateral tibial bowing deformity and noted pain when Mary moved her knees at extremes of motion. He also found mild crepitation on passive motion of the knees.
As to Mary's right foot, Dr. Morin found minimal soft tissue thickening about the base of the fifth metatarsal bone. He found no swelling or other external evidence of injury or deformity. There was tenderness at the base of the fifth metatarsal bone while the rest of the foot was non-tender. X-rays of the foot revealed a healed fracture of the base of the fifth metatarsal with excellent alignment and positioning.
Dr. Morin concluded that Mary had 5% partial permanent disability in each knee. He also found 3% partial permanent disability in Mary's right foot.
At trial, Mary testified that, as a result of her injuries, she and her husband were unable to attend social functions and dances which they had previously enjoyed together. She stated that the pain in her knees preclude her from stooping down and thus, she had to employ someone to help her with her housework. She stated that her knees continue to bother her, especially when climbing stairs. She also testified *1025 that her right ankle is weak and her right foot continues to hurt her at times. She stated that there has been no improvement in her knees since her fall in May of 1982, complaining that the agility in her legs is gone.
It is axiomatic that the reviewing court should not disturb the trier of fact's award for general damages absent an initial determination that the fact finder abused his discretion under the facts of a particular case. Reck v. Stevens, 373 So.2d 498 (La. 1979) and the cases cited therein.
After reviewing the particular injuries and their effect upon this elderly lady, we conclude that we should not reduce the trial court's award. The injuries occasioned by the fall in May of 1982 and subsequently in August of 1982 have placed serious limitations on the activities of this previously active individual. Although we consider the award of $23,000.00 to be very generous, we cannot say that it is higher than the highest possible award under a reasonable evaluation of the evidence. For these reasons, we affirm the trial court's award.

DECREE
For the above and foregoing reasons, the judgment of the trial court in favor of plaintiffs, Mary and Leon Edmond, and against defendants, Market Basket Stores, Inc. and Cherokee Insurance Company, is affirmed. Costs of this appeal are to be paid by the defendants.
AFFIRMED.
NOTES
[1] The evidence is in conflict as to the number of strawberries on the floor at the time of the fall. Mary Edmond testified that there were between 15 and 25 strawberries on the floor while two employees of Market Basket claim that only one strawberry was found on the floor after Mary's fall. Nonetheless, it is undisputed that there was at least one strawberry on the floor which caused Mary to slip and fall.