LABORDE, Judge.
This is a personal injury suit. The plaintiff, Evonne Hayes, was injured while riding on a seesaw. She then filed this proceeding against The City of Alexandria, Marco Macera and his homeowners insurer (Lafayette Insurance Company, hereinafter Lafayette), Mikor, Inc., and D. & A. Associates of New Orleans. All defendants except Macera and Lafayette were subsequently dismissed. Macera filed an incidental demand against Lafayette to recover sums allegedly expended on behalf of plaintiff for first aid. The trial court granted judgment in favor of plaintiff and against Macera and Lafayette in the amount of $16,980.15, and in favor of Macera, on the *386 incidental demand, in the amount of $1,018.50. Plaintiff and Lafayette both appeal from the judgment on the main demand. Lafayette also appeals the judgment on the incidental demand. We affirm in part, reverse in part, and render.
We begin our review by reproducing the trial judge’s reasons for judgment which concisely summarize the facts leading up to this unusual accident.
“On September 22, 1981, plaintiff, her minor son Randy, and Mr. Macera were at the Alexandria City Park. Plaintiff and Mr. Macera were seesawing while Randy was standing in the center of the seesaw rocking back and forth. At a moment when Mr. Macera’s end of the seesaw was down, and plaintiff's was up, Randy jumped to the ground without warning. This alarmed Mr. Macera, and he jumped off the seesaw to render assistance to Randy. This caused plaintiffs end of the seesaw to fall to the ground from a height of approximately five feet. Before she fell, plaintiffs legs were tucked underneath her end of the seesaw. She suffered a severe fracture of her left leg, which required surgery and hospitalization. Fortunately, she has no residual disability from the injury.
Although Mr. Macera jumped off the seesaw in the mistaken belief that Randy was in peril, it is the opinion of the Court that he was negligent in doing so without warning. He knew that plaintiff was suspended in the air, and that her weight would cause her to fall to the ground. His negligence was a cause of plaintiffs injuries.
The Court is also of the opinion that plaintiffs conduct falls below the standard of care of a reasonable person under the circumstances. She should have known that having her legs underneath the seesaw increased her chances of being injured should she suddenly fall to the ground. Her negligence was a contributing cause of her injuries, therefore, her degree of negligence should be apportioned accordingly.
It is the opinion of the Court that the negligence of the parties should be apportioned 70% to Mr. Macera and 30% to plaintiff.
Plaintiff suffered the following damages which should be reduced by the percentage of negligence attributed to her:
General Damages $20,000.00
St. Prances Cabrini Hospital 1,018.50
Alexandria Orthopedic Clinic 1,917.00
Rapides General Hospital 3,300.00
Alexander & Buckley 43.00
Alexandria Anesthesia Service 196.00
Loss of Wages 4,095.00
Immediately after the accident occurred Mr. Macera rushed plaintiff to St. Frances Cabrini Hospital, where he guaranteed payment of her bill in order for her to be admitted. The bill was $1,018.50, which he paid. It is the opinion of the Court that this constituted immediate first aid under the terms of his policy with Lafayette Insurance Company. He is entitled to a judgment against Lafayette for that amount, but not for any subsequent medical expenses he paid on behalf of plaintiff. Lafayette and Macera are entitled to a credit for that amount on plaintiffs judgment against them.”
APPORTIONMENT OF FAULT
Lafayette alleges several assignments of error, arguing first that the trial court erred in assigning 70 per cent of the fault to Macera and only 30 per cent to plaintiff. Plaintiff, arguing that she was entirely free from substandard conduct, also assigns as error the trial court’s apportionment of fault.
Our review of the jurisprudence offers little guidance as to how to best apportion fault in a case such as this. There are scarce few cases on record involving the misuse vel non of a seesaw. In fact, our research uncovered none. We are thus constrained to review the arguments of the parties and to determine which are more convincing.
Lafayette advances a multi-pronged attack. It urges that Macera be excused, on *387 the basis of the sudden emergency doctrine, for failing to adopt what subsequently appeared to the trial judge as the better course of action. When the child jumped unexpectedly from the seesaw, an emergency not of Macera’s own making was created. Lafayette cites the case of Copeland v. Louisiana Department of Transportation and Development, 428 So.2d 1251 (La.App.3d Cir.), writ denied, 435 So.2d 448 (La.1983), as authority for the validity of the sudden emergency doctrine. Lafayette also urges reversal on causation grounds: the primary cause-in-fact of plaintiff’s injury was her own or her son’s negligence. The plaintiff is supposed to have engaged in substandard conduct by knowingly allowing her child to straddle the seesaw while it was in use. Lastly, Lafayette urges reversal on the grounds articulated by the trial judge: wrapping one’s legs under a seesaw is no way to ride.
The plaintiff’s reasons for urging reversal of the trial court’s apportionment of fault are more convincing. The evidence reflects that plaintiff was riding with both legs tucked under the seesaw, but that only one of plaintiff’s legs was crushed underneath the contraption. How this occurred is not clear. We are secure in our conviction, however, that the crushed leg served to buffer the impact of plaintiff’s buttocks and coccyx upon the ground. In sum, there is every reason to believe that the spread-leg style of riding a seesaw would have resulted in equally, if not more, severe injuries.
We cannot condone plaintiff's permitting her child to straddle the seesaw, but we resist Lafayette’s effort to steer our focus away from the predominant cause-in-fact of the accident; but for Mac-era’s sudden dismount from his end of the seesaw, plaintiff would have suffered no injury. In light of Macera’s own conflicting testimony as to why he made this rash decision, we conclude that his mistaken belief as to the child’s peril was totally unreasonable. The finding that plaintiff was contributorily negligent cannot stand. We therefore assess Macera with 100% of the fault in this case.
QUANTUM
We next address Lafayette’s contention that the award to plaintiff of $20,000.00 for general damages was excessive, and that it should be reduced to $12,000.00 — $15,-000.00. We are referred to Phillips v. Skate Country East, 420 So.2d 730 (La. App. 4th Cir.), writ denied, 423 So.2d 1162, 1163 (La.1982), for the proposition that $12,000.00 in general damages is adequate compensation to a plaintiff who suffers a broken tibia and a broken fibula. Plaintiff reminds us on appeal that we are not dealing with a simple broken leg, but with a broken leg which healed only after serious complications had developed. Indeed, after an initial operation and a five day hospital confinement, plaintiff suffered complications severe enough to require a second operation. It was performed one month later. Plaintiff came out of this second operation sporting an internal metal plate affixed to her bone with four screws. She is also scarred. She testified that exposure of her leg to direct sunlight causes the plate to heat up noticeably.
We acknowledge that $12,000.00 was, in the Phillips case, adequate compensation under the circumstances. It is important to point out, however, that the trial court in Phillips found no liability at all on the part of the defendant skating rink. The Court of Appeal reversed and decided the damages issue for itself. Second, Chief Judge Redmann’s dissent indicates that there was considerable evidence in the record to suggest that the plaintiff had, as the jury concluded, assumed the risk of her own injuries. Since the trial court erred on the liability issue, there was no damage determination by a fact finder which was entitled to any deference. We, on the other hand, are asked to find that the record as a whole does not support the trial judge’s finding that, in this case, the plaintiff is entitled to $20,000.00 in general damages. The jurisprudence is replete with cases awarding damages ranging from *388 $5,000.00 to $25,000.00 for broken legs and accompanying complications. See, e.g., Sears v. City of Springhill, 303 So.2d 602 (La.App.2d Cir.1974), writ refused, 307 So.2d 371 (La.1975); and Edmond v. Market Basket Stores, Inc., 479 So.2d 1020 (La.App.3d Cir.1985). The award here, falling within the upper range of awards which have been given for similar injuries, is no anomaly. We decline to increase the award, for plaintiff has not established resultant disability. We affirm the $20,-000.00 award for general damages because there was no abuse of discretion.
LOSS OF WAGES
Lafayette next complains that the trial court erred in awarding plaintiff $4,095.00 for loss of wages. The basis of this specification of error is that the plaintiff allegedly told her physician that she was fit enough to attend Mardi Gras in February of 1982, some five months after the accident. Lafayette argues that, if she was well enough “to Gras,” she was well enough to work. Since plaintiff was earning only $3.50 per hour in her former part-time position, the argument continues, she suffered at most a wage loss of $1,785.00. We decline to reverse the trial court’s award. The trial court read the physician’s deposition and heard plaintiff testify. The trial court’s determination in such a circumstance is entitled to great weight. There is sufficient evidence to support the award for lost wages.
INSURED’S ALLEGED FAILURE TO COOPERATE WITH THE INSURER
Lafayette’s policy provides in part:
“The insured shall cooperate with this Company and, upon this Company’s request, assist in making settlements, in the conduct of suits and in enforcing any light of contribution or indemnity against any person or organization who may be liable to the insured because of bodily injury or property damage with respect to which insurance is afforded under this policy; and the insured shall attend hearings and trials and assist in securing and giving evidence and obtaining the attendance of witnesses. The insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for first aid for others at the time of the accident.”
Lafayette alleges that its insured, Marco Macera, violated the “cooperation clause” by voluntarily making payment, and demanding reimbursement, for services rendered to plaintiff which were unconnected with first aid. A fairer reading of the policy, in our view, establishes that the insured must cooperate generally and that he will be denied recovery under the policy for excluded expenditures, i.e., those expenditures rendered for medical services other than first aid. The policy clearly contemplates that an insured may make other payments at his own cost.
In sum, we find two independent directives aimed at the insured in the “Insured’s Duties” section of the policy: 1) cooperate; and 2) pay for post first aid medical expenses at your own cost. Failure to appreciate the second does not constitute a breach of the first.
Lafayette complains that Macera’s demand for reimbursement effectively obstructed settlement. But Lafayette itself argues that “[t]he policy of insurance ... does not require Macera’s consent to settle[.]” At worst, Macera urged plaintiff, his girlfriend, to hold out for a higher recovery. Lafayette cites the case of Freyou v. Marquette Casualty Company, 149 So.2d 697 (La.App.3d Cir.), writ refused, 150 So.2d 771 (La.1963), for the rule that breach of a cooperation clause must be both material and prejudicial to relieve the insurer. To repeat, we are not convinced that the insured’s erroneous demand for a payment, the reimbursement of which is excluded under the policy, constitutes failure to cooperate. At any rate, we find no prejudice and reject this assignment of error.
THE INCIDENTAL DEMAND
The trial judge awarded defendant Macera $1,018.50 as against defendant La *389 fayette as reimbursement under the policy for first aid costs paid on behalf of plaintiff.
There are two prongs to Lafayette’s argument for reversal of the award. First, Lafayette reurges its argument that Mac-era had no coverage under the policy because he failed to cooperate with the insurer. We have already rejected this contention. We have reproduced, above, the clause in the policy which enjoins the insured from making payments, except at his own cost, for any expense other than for first aid to others at the time of the accident. The issue thus becomes: was Mac-era’s payment of $1,018.50 to St. Francis Cabrini Hospital for first aid?
The trial judge’s reasons for judgment reflect his approach to this issue. Had Macera not guaranteed payment of the hospital bill, plaintiff would not have been admitted.
Lafayette argues that the purpose of the first aid clause is to make certain that life saving aid is rendered to an injured party without giving thought to whether or not liability for that treatment rests with the party securing the treatment. This may be the purpose, but the policy simply does not make reference to life saving aid.
Some of the treatment provided at Cabrini Hospital could be interpreted as ultra first aid. The trial judge, however, felt otherwise. Since the record is devoid of any itemized description of services rendered, we must conclude that the trial judge’s decision to qualify the entire treatment at Cabrini Hospital as first aid is correct.
For the above and foregoing reasons, the judgment of the trial court is reversed insofar as it reduces plaintiff’s award on the basis of contributory negligence. The total award is $30,569.50, reduced by Macera’s payment of $4,418.50, or $26,151.00. The judgment on the third party demand is affirmed. All costs on appeal are assessed to Lafayette Insurance Company.
AFFIRMED IN PART; REVERSED IN PART; AND RENDERED.