**Bertha Jolivette ZENO, Plaintiff-Appellee,**

v.

**The GREAT ATLANTIC AND PACIFIC TEA COMPANY, d/b/a A & P Food Stores, Defendant-Appellant.**

**No. 86-4127 Summary Calendar.**

United States Court of Appeals, Fifth Circuit.

Oct. 24, 1986.

Sera H. Russell, III, Lafayette, La., for defendant-appellant.

Glenn J. Armentor, Lafayette, La., for plaintiff-appellee.

Before RUBIN, JOHNSON, and JONES, Circuit Judges.

JOHNSON, Circuit Judge:

The defendant, a grocery store company, appeals from an adverse jury verdict in a "slip and fall" case that came to the district court on removal from Louisiana state court. The issues are: (1) whether the jury's finding of liability was clearly erroneous and unsupported by the evidence; and (2) whether the jury's damages figure, $95,000.00, was so clearly erroneous as to "shock the conscience of the court."

We find that the record sufficiently supports both the findings on liability and damages, and accordingly affirm.

## I. *FACTS*

On a rainy Sunday in Lafayette, Louisiana, Mrs. Bertha Zeno, a sixty-five-year-old seamstress, stopped off at the local A&P store to buy some chicken on her way home from church. Just inside the store's electric doors, she noticed a large puddle of water and carefully skirted it. A few feet further on, as Mrs. Zeno was about to turn into one of the aisles, her foot slipped and she fell forward, fracturing her left leg and her right elbow.

The store manager filed an accident report on a form. In it, he described the accident with the words "water from rain on floor. Slipped and felled [sic]," and in the space for "defect or substance" on the floor, he wrote "water."

Mrs. Zeno incurred $807.00 in medical bills as a result of the accident. By the time of trial, the injury to her leg had healed; however she continued to experience pain in her elbow. Her doctor testified that this pain was likely to continue for the rest of her life and that Mrs. Zeno would suffer a ten percent impairment in her right arm and should avoid work or hobbies that would place stress on it. The injury to her arm was in her right elbow and she was right-handed. Before the accident, Mrs. Zeno worked as a part-time seamstress, earning about $5,000.00 a year, and planned to continue for at least two more years. After the accident, she stopped working and avoided household chores, gardening, and picking up her grandchildren because she experienced pain when bending or putting weight on her elbow.

## II. *A & P'S LIABILITY*

Louisiana law authorizes an action for negligence, placing on the plaintiff the burden of proving a fault by the defendant that caused injury. *Eschete v. City of New Orleans*, 258 La. 133, 245 So.2d 383 (1971).

In slip and fall cases, the Louisiana courts have held that the plaintiff can satisfy his burden on fault by proving that there was a foreign substance on the floor; the burden then shifts to the store owner to prove that it fulfilled its duty to provide customers a safe place to shop. *Kavlich v. Kramer*, 315 So.2d 282, 284–85 (La.1975); *Gonzales v. Winn-Dixie Louisiana, Inc.*, 326 So.2d 486 (La.1976). The store owner can meet this burden by proving that he took reasonable efforts to inspect his floors, clean up foreign substances, and, if appropriate, warn customers. *Johnson v. Tayco Foods*, 475 So.2d 65, 68 (La.App.2d Cir.), *writ denied*, 478 So.2d 149 (La.1985); *Wilson v. Wal-Mart Stores, Inc.*, 448 So.2d 829, 831 (La.App.2d Cir.1984); *Albritton v. J.C. Penney Co., Inc.*, 385 So.2d 549, 551 (La.App.3d Cir.), *writ denied*, 393 So.2d 727 (La.1980).

In this case, the store owner contends that Mrs. Zeno did not meet her burden of proving that there was a foreign substance on the floor at the point where she fell. Mrs. Zeno, her husband, and the store manager testified that they did not notice any water at that point. However, there was testimony that customers had been entering through the large puddle at the door for several hours, and the jury could have inferred that these customers tracked water to the spot. In addition, Mr. and Mrs. Zeno testified that, just after the fall, they noticed a large spot on her coat that had not been there before. Store employees stated that they used a water-soluble floor wax, and the jury could have concluded that this wax, softened by rainwater, became slippery, causing the fall and the spot on Mrs. Zeno's coat. Finally, the jury could have given credence to the form filled out by the store manager immediately after the accident, acknowledging water on the floor.

The store does not claim to have met its burden of proving reasonable care; it does argue that the jury should have assigned more than twelve percent of the fault to Mrs. Zeno. However, nothing in the record indicates that this percentage is incorrect. A customer must take care to avoid obvious store hazards, but need not look at the floor before each step. *Peralta v. Schwegmann Bros. Gt. Supermkts, Inc.*, 406 So.2d 720, 722 (La.App. 4th Cir.1981), *writ denied*, 410 So.2d 762 (La.1982). Indeed, stores encourage customers to look at eye-catching displays. *Kavlich v. Kramer, supra* at 284.

The jury's finding that a foreign substance on the floor was eighty-eight percent responsible for Mrs. Zeno's injuries binds this Court as long as "there is a rational basis in the record for the jury's verdict." *Reyes v. Wyeth Laboratories*, 498 F.2d 1264, 1288 (5th Cir.1974); *Porter v. American Optical Corp.*, 641 F.2d 1128, 1137 (5th Cir.), *cert. denied*, 454 U.S. 1109, 102 S.Ct. 686, 70 L.Ed.2d 650 (1981). The jury in this case has fulfilled its function as trier of fact "to weigh conflicting evidence and inferences and determine the credibility of witnesses." *Boeing Company v. Shipman*, 411 F.2d 365, 375 (5th Cir.1969) (en banc). The verdict is supported by "substantial evidence" and "reasonable inferences," *id.* at 374, and we decline to overturn it.

### III. *DAMAGES*

In a single sentence, at the conclusion of its brief, A&P alludes to the amount of damages as follows: "Alternatively, it is submitted that the jury abused its discretion in apportioning fault and in awarding $95,000.00 in damages." The brief furnishes us with no analysis of the record on the amount of damages, no authority for granting a remittitur in the instant case, no enumeration of the standards to use in calculating the proper measure of damages, and no estimate of what amount of damages might be excessive. Understandably, Mrs. Zeno's brief spends barely a page defending the jury award. The normal rule in this Circuit provides that contentions not briefed are waived and will not be considered on appeal. *Zuccarello v. Exxon Corp.*, 756 F.2d 402, 407–08 (5th Cir.1985). The rule is necessary both because the appellate system cannot handle a

high volume of cases without adequate briefs from the parties, and because one party's failure to brief an issue deprives the other party of notice to develop that issue in the opposing brief. However, a short discussion of damages is in order.

Jury damage awards, especially when approved by the trial court, should not be disturbed on appeal unless they are "entirely disproportionate to the injury sustained." *Caldarera v. Eastern Airlines, Inc.*, 705 F.2d 778, 784 (5th Cir.1983). Because fixing the amount of damages requires the sifting and weighing of masses of facts, the jury's figures demand deference from the appellate court, unless they "shock[ing] the judicial conscience" or "exceed that amount that *any* reasonable man could feel the claimant is entitled to." *Bridges v. Groendyke Transport, Inc.*, 553 F.2d 877, 880 (5th Cir.1977) (emphasis in original); *Complete Auto Transit, Inc. v. Floyd*, 249 F.2d 396, 399 (5th Cir.), *cert. denied*, 356 U.S. 949, 78 S.Ct. 913, 2 L.Ed.2d 843 (1958). In declining to overturn a damages award, an appellate court does not necessarily approve that award or signal that, sitting as a trial court before the same evidence, it would reach the same result. *Sosa v. M/V LAGO IZABEL*, 736 F.2d 1028, 1035 (5th Cir.1984). It merely holds that the award falls within the broad bounds of discretion accorded the jury in factual matters.

■ In this case, A&P does not contest the conservative amounts that Mrs. Zeno requested for medical expenses and lost wages. It apparently only objects to the $79,193 which she was awarded for past and future pain and physical impairment, or general damages.[1] Evidence in the record supports this amount of damages.

Mrs. Zeno suffered two fractures. The injury to her leg took several months to heal, and the injury to her elbow will, according to uncontradicted medical testimony, continue to pain her for the rest of her life. She has experienced a ten percent permanent impairment to her right arm, and she is right-handed. Before the accident, she was employed and active in housework, gardening, and hobbies; the accident forced her to quit her job and drastically curtail these activities. These effects will likely continue for at least ten years, since Mrs. Zeno is otherwise in good health and can expect to live out her normal life span. In sum, the jury had ample reasons other than "bias, passion, prejudice, corruption, or other improper motive" for reaching the amount that it did. *Allen v. Seacoast Products, Inc.*, 623 F.2d 355, 364 (5th Cir.1980).

Even if this Court were to consider a remittitur, the result would be similar. The Fifth Circuit follows the "maximum recovery rule," according to which remittitur can only reduce a verdict to "the maximum amount the jury could properly have awarded." *Caldarera*, 705 F.2d at 784; 11 C. Wright & A. Miller, Federal Practice and Procedure § 2815 at 104 and n. 6 (1973 and 1986 Supp.).[2] The rule requires us to reconstruct the evidence and then to make a guess as to the maximum award a jury might have made.

One way to apply this rule is to look at cases that in the recent past have properly applied Louisiana damages law in order to find the *greatest* amount that they have awarded for similar injuries. The dissent cites several cases, with facts which might appear to be similar to the instant case, in which juries made lower awards. How-

1. This figure appears to have been reached by subtracting from the total damages of $95,000.00, $807.00 in past medical bills and $15,000.00 for lost wages (the two years before trial and one year after trial, at $5,000.00 per year). The figure probably overestimates the proportion of the verdict which the jury intended to represent general damages, since the jury may have believed that Mrs. Zeno would incur future medical expenses for her injury and could have worked for more than three years.

2. This is the least defendant-favorable of the three possible remittitur rules. The other rules provide that remittitur arrive at the *lowest* amount the jury could have awarded, or the amount that the court thinks the jury *should have* awarded. 11 C. Wright & A. Miller, § 2815, at 104.

ever, it is likewise possible to find similar injuries for which juries returned comparable or higher awards. For example, a customer who slipped, fell and sustained a twenty percent permanent disability received $100,000.00 in general damages. *Wilson v. Wal-Mart Stores, Inc.,* 448 So.2d 829 (La.App.2d Cir.1984). A right-handed plaintiff who suffered an injury only to his *left* arm also recovered $100,000.00 in general damages. *Dunaway v. Rester Refrigeration Service, Inc.,* 428 So.2d 1064 (La. App. 1st Cir.), *writ denied,* 433 So.2d 1056 and 433 So.2d 1057 (La.1983). Another received $62,500.00 in total damages for an injury to a knee causing a five to twenty-five percent disability. *Samanie v. Bourg,* 434 So.2d 149, *amended to St. Paul Fire & Marine Ins. Co. v. Bourg,* 434 So.2d 157 (La.App. 5th Cir.), *writ denied,* 435 So.2d 445 (La.1983). Yet another plaintiff recovered $100,000.00 for pain and suffering after losing twenty percent of the use of a knee. *London v. Bell,* 422 So.2d 260 (La. App. 4th Cir.1982).

■ The dissent correctly points to factual differences between these cases and the instant case; it is equally true, however, that there are factual differences in the cases relied on by the dissent and the instant case. No two lawsuits will ever present entirely comparable facts. If appellant's brief had properly presented and urged this issue (resulting, no doubt, in a more complete response by the appellee), and if this Court followed the minimum or median remittitur rules of other circuits, then the cases presented by the dissent might support giving consideration to lowering the award. But that is simply not the scenario before the Court. Looking at the facts in the instant case, looking at the entire range of Louisiana damage awards for roughly similar injuries, and taking into account the fact that the trial judge, who is familiar with Louisiana law, refused to grant a remittitur, we cannot say that the amount awarded in this case exceeds the *maximum,* or that the amount awarded shocks the conscience of the court. In any event, we would be reluctant to second-guess the jury and the learned and experienced trial judge without some semblance of guidance from the briefs (particularly from the appellant) on the issue.

AFFIRMED.

EDITH HOLLAN JONES, Circuit Judge, concurring in part and dissenting in part:

I agree with the majority's position on the issue of liability. I disagree, however, and therefore dissent from my colleagues' decision to affirm the quantum of damages assessed by the jury. The jury returned a lump sum award of $95,000.[1] Out of this lump sum, it is estimated that $79,193 was allocated to compensate the plaintiff for her general damages—*i.e.,* those damages resulting from her past and future physical and mental pain, and for physical impairment. Given the nature of the injuries sustained by Mrs. Zeno when she fell, a general damages award of more than $79,000 is clearly outside the realm of reasonableness. Mrs. Zeno injured a knee and her right arm when she fell. Any damages attributed to the knee injury must be minimal, however, as Mrs. Zeno sought treatment for it only on the date of the accident.

With respect to her elbow, however, the record reflects continued complaints of pain and a 10% physical impairment. Despite the pain, Mrs. Zeno's attending physician discharged her from his care in 1984. She waited one year to return to her doctor, and this final visit was prompted by an ailment unrelated to her slip and fall accident. Mrs. Zeno has never been hospitalized for care or management of her injuries. No surgery has ever been performed on the arm, and her doctor testified that it was unlikely that she would require surgery in the future. Any continued pain she may suffer does not appear to be severe. There are no life expectancy figures in the record, but she was 65 years old at the date

---

1. Since the jury found Mrs. Zeno 12% contributorily negligent, the sum she was actually awarded amounted to $83,600.

of the accident. For all these reasons it appears that the general damages rendered by the jury were "entirely disproportionate to the injury sustained"[2] and the court therefore abused its discretion in failing to condition the judgment for Mrs. Zeno on acceptance of a remittitur.

To support their affirmation of the jury's award, the majority cites three cases where the general damages awarded were greater than those awarded here, and cites to one case where the general damages were approximately $17,000 less than those rendered in this case. Those cases are not comparable for purposes of gauging a reasonable jury verdict, and their dissimilarity proves the excessiveness of this award. In *Wilson v. Wal-Mart Stores, Inc.,*[3] a 49 year-old plaintiff was awarded $100,000 general damages for injuries she sustained to her back, hip, right knee, and both ankles. This plaintiff underwent surgery to remove a ruptured disc, and she was hospitalized no less than five times after the disc surgery because of continued pain.[4] General damages totalling $100,000 were awarded to the plaintiff in *Dunaway v. Rester Refrigeration Service, Inc.*[5] In that case, the plaintiff's injuries resulted in his having to undergo surgery twice. In addition, he developed degenerative arthritis in the injured arm area. Continued pain was anticipated during the remainder of his life which was expected to last another 16.05 years.[6]

The majority notes that the plaintiff in *Samanie v. Bourg*[7] was awarded $62,-500.00 in total damages for a "mere" knee injury. The majority fails to point out, however, that as a result of this injury, it was "more probable than not that" the plaintiff would require surgery to repair a ligament and a meniscectomy. The injury was held to be one "of a serious nature, resulting in instability of the left knee and an expected degree of permanent disability [from 5% to 25%]."[8] Finally, the majority cites to *London v. Bell,*[9] another case where the plaintiff recovered $100,000 for a knee injury. This knee injury, however, resulted in the plaintiff's suffering excruciating pain. The pain was so severe, the plaintiff "constantly cried while in the hospital" and required palliative morphine and codeine.[10] Not only had this plaintiff sustained 20% disability to the knee, she would also require surgery in the future. None of the cases discussed by the majority involves injuries similar to those sustained by Mrs. Zeno, and the plaintiffs in these cases had either undergone surgery, or were expected to undergo surgery in the future.

Turning to those cases where the injuries are in fact similar to those sustained by Mrs. Zeno, we find awards ranging from $7,500 to $23,000. For example, $23,000 was awarded to a 66 year-old woman who, like Mrs. Zeno, slipped and fell in a grocery store. The plaintiff in that case continued to have pain in the foot she fractured and in the knee she injured. The $23,000 was held to be "very generous" but not excessive. *Edmond v. Market Basket Stores, Inc.,* 479 So.2d 1020, 1023–24 (La.App. 3d Cir.1985). In another case, the plaintiff's slip and fall accident resulted in injury similar to that sustained by Mrs. Zeno (a fracture of the right radial head of her elbow). Even with complaints of continued pain and limitation of movement, she was awarded only $7,500. *Yoder v. Schwegmann Bros. Giant Super Mkts., Inc.,* 407 So.2d 449, 450 (La.App. 4th Cir.1981). In still another

2. *Caldarera v. Eastern Airlines, Inc.,* 705 F.2d 778, 784 (5th Cir.1983).

3. 448 So.2d 829 (La.App. 2d Cir.1984).

4. *Id.* at 833.

5. 428 So.2d 1064 (La.App. 1st Cir.), *writ denied,* 433 So.2d 1056 and 433 So.2d 1057 (La. 1983).

6. *Id.* at 1069–70.

7. 434 So.2d 149, *amended to St. Paul Fire & Marine Ins. Co. v. Bourg,* 434 So.2d 157 (La. App. 5th Cir.), *writ denied,* 435 So.2d 445 (La. 1983).

8. *Id.* at 152–54.

9. 422 So.2d 260 (La.App. 4th Cir.1982).

10. *Id.* at 262.

**184**

grocery store slip and fall case, a general damage award of $16,917 was sustained for an elbow injury. Unlike Mrs. Zeno, this plaintiff's injuries resulted in a 50% loss of use in her injured arm. *Peralta v. Schwegmann Bros. Giant Supermkts., Inc.*, 406 So.2d 720, 722–23 (La.App. 4th Cir.1981), *writ denied*, 410 So.2d 762 (La.1982).

Mrs. Zeno should not benefit from a windfall that yields damages quite disproportionate to her injury and to the injuries of people comparably situated. Our jury system relies on the common sense and perception of jurors to adjust damages according to differing fact patterns, and thus we may expect differences in the awards among cases. However, when damages assessed in behalf of a plaintiff such as Mrs. Zeno are three to four times the "very generous" recovery in comparable cases, the adversarial system has not yielded a defensible result. It is true that defense counsel did not pursue the excessiveness of the award with zeal in the trial court or in this court. His reluctance is probably attributable to a sense that to do so would be futile in light of the traditional reluctance of appellate courts to disturb jury awards. We should shy from encroaching on the jury's function in the usual case, but we would ignore our mandate by declining to scrutinize the amount of an award of intangible damages simply because a jury arrived at it. When the standard of similar awards in comparable cases is totally at odds with the jury's conclusion, as it is here, we should not strain to approve it, as the majority has done.

I therefore respectfully dissent.